No. 68,306

CHARLES L. WINTER and DARLENE M. GRAFF, *Appellants*, v. CLIFFORD R. HOPE, JR., attorney, and HOPE, MILLS, BOLIN, COLLINS & RAMSEY, a law partnership, *Appellees*.

(861 P.2d 1282)

Opinion filed October 29, 1993.

*Glenn R. Braun*, of Glassman, Bird & Braun, of Hays, argued the cause and was on the brief for appellants.

*David A. Morris*, of Curfman, Harris, Rose, Weltz & Smith, of Wichita, argued the cause, and *Alan G. Metzger*, of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiffs, Charles L. Winter and Darlene M. Graff, the former co-conservators of the estate of Fred A. Marcotte, appeal from the order of the district court granting summary judgment in favor of the defendants in a legal malpractice action filed against Clifford R. Hope, Jr., and his law firm (Hope). The Court of Appeals affirmed the district court in

an unpublished opinion filed March 12, 1993. We granted plaintiffs' petition for review.

This appeal is related to our decision in *In re Conservatorship of Marcotte*, 243 Kan. 190, 756 P.2d 1091 (1988). Plaintiffs are alleging that Hope negligently failed to advise them of their statutory duty to file annual accountings while acting as the co-conservators for Fred A. Marcotte. In *Marcotte*, the relevant facts were set out as follows: "In July 1980, Fred A. Marcotte filed a voluntary petition for conservatorship with the Finney County District Court. . . . The district court accepted the petition on July 18, 1980, and appointed a nephew and niece of Marcotte, Charles L. Winter and Darlene M. Graff, as co-conservators." 243 Kan. at 191.

Fred Marcotte died testate on October 25, 1983. Winter and Graff petitioned to end the conservatorship and filed an accounting for the period of its existence, July 1980 through October 1983. In January 1984, the district court terminated the conservatorship and discharged Winter and Graff as co-conservators. 243 Kan. at 191.

Heirs and legatees and a special administrator challenged gifts made by the co-conservators to themselves or family members during the conservatorship. 243 Kan. at 191-92. This court stated that "[a] voluntary conservatee may not dispose of personal property by inter vivos conveyance during the conservatorship without court approval." 243 Kan. 190, Syl. ¶ 1. The court held that Winter and Graff were liable for the value of the gifts and expenses, with interest, and that the K.S.A. 59-1704 double-value penalty for conversion applied regardless of their good faith. The penalty assessed against each was $49,000. See 243 Kan. at 192-95.

Clifford Hope was the attorney who set up the conservatorship. Hope gave Winter and Graff advice about their rights and duties as co-conservators. Hope asserts that he advised them of their duty to file annual accountings; Winter and Graff assert that he did not. Winter and Graff contend that the filing of annual accountings could have afforded opportunities for court approval of the gifts. Even though it lies right at the heart of this lawsuit, the disputed fact is not material to the reasoning of the lower courts. Both the district court and the Court of Appeals concluded

that the co-conservators would not have been relieved of liability for conversion even if they had filed annual accountings.

Nearly three years after the conservatorship was established, on July 8, 1983, Hope wrote to Winter and Graff, advising them that Kansas law required them to file annual accountings with the court. He added that the rule was not strictly enforced.

There is no allegation that Clifford Hope was aware of the gifts to the co-conservators and their family members.

According to the district court, "[a] review of the final accounting prepared and filed by the plaintiffs reflects that 'stock purchase—gifts' were made to plaintiff on the following dates: December 8, 1980; April 22, 1981; May 19, 1981; December 14, 1981; January 6, 1982; and May 23, 1983." If Winter and Graff had timely filed annual accountings, they would have submitted them to the district court in the month of August in 1981, 1982, and 1983.

In the present case, the district court entered summary judgment in favor of Hope and against Winter and Graff on the ground that the alleged negligent conduct of Hope could not be shown to be the proximate cause of the co-conservators' damages. The Court of Appeals affirmed.

The pertinent portion of K.S.A. 1980 Supp. 59-3029, during the period of the conservatorship, stated: "Except where expressly waived by the court, every conservator shall annually present a verified account covering the period from the date of appointment or the last account."

In granting summary judgment for Hope, the district court reasoned as follows:

"24. If, as Plaintiffs contend, the Defendants' failure to properly advise them concerning the annual accounting resulted in the damages they now claim, then it's safe to assume that 'but for' the absence [of] the annual accounting, Plaintiffs would have incurred no liability. The facts in this matter, however, fail to support Plaintiffs' position. Assuming for sake of argument that the Plaintiffs had filed their annual accountings in a timely fashion, they would have submitted such accounts in August for each of the years 1981, 1982 and 1983. If it is further assumed that each year's accounting evidenced the 'stock purchase—gift' made during that period, then it appears that for each such year, the gifts would have been conveyed well before the accounting was ever due. Since no one other than the co-conservators, the stockbroker and perhaps the conservatee had actual notice of the inter

vivos transfers, there was never an opportunity to approve or challenge such conveyances until well after the fact. It appears, therefore, that Plaintiffs would have this Court adopt the theory that the filing of an annual accounting somehow equates to Court approval. Under the facts presented herein, to do so would amount to the Court merely ratifying that which has already occurred—in essence, an ex post facto proceeding which confirms rather than approves the conveyances, and which serves no purpose, where the gifts had already been expended or the funds depleted or assigned.

"25. This Court is of the opinion that the appellate courts, in holding that a voluntary conservatee could not make an inter vivos conveyance of personalty without Court approval, necessarily intended that such approval predate the actual conveyance. . . .

. . . .

"26. This Court would conclude, therefore, that as to Plaintiffs' claim that Defendants were negligent in failing to properly advise the Plaintiffs, as conservators, concerning an annual accounting, there is no causal connection or proximate cause between any such omission and the damages Plaintiffs seek to recover. To summarize, the Court's rationale is based on the conclusion that under the facts and circumstances presented, the filing of an annual accounting and the Court's mere ratification of the conservators' acts is inappropriate and would not have altered the holding in *Marcotte*[, 243 Kan. 190,] as it pertains to Plaintiffs' liability."

The Court of Appeals stated that the issue which "controls the outcome of the case" is "when and how" court approval of a conservatee's conveyances should be sought and obtained. In *Marcotte*, this court stated that "a voluntary conservatee may not dispose of personal property by inter vivos conveyance during the conservatorship without court approval," 243 Kan. at 194, but did not specify when the approval had to be obtained. The Court of Appeals reasoned that

"[i]f the proper method for seeking court approval is by including the conveyance in the annual accounting, then [Winter and Graff] could have avoided liability for conversion by simply filing an annual accounting that included the conveyance . . . .

"If, on the other hand, court approval must be sought before the conveyance can be made, then merely including the conveyance in the annual accountings could not have absolved [them] of liability."

The Court of Appeals concluded that "the proper time for seeking court approval for inter vivos transfer of conservatorship assets is prior to the transfer." Thus, according to the Court of Appeals, Winter and Graff

"could not have escaped liability for conversion by including the transfers in an annual accounting since any such accounting would be after the transfer occurred. Therefore, even if [Hope] breached [his] duty to [Winter and Graff] by not fully advising them of the need to file annual accountings, this breach was not the cause of the penalty for conversion assessed against [them].".

Factors considered by the Court of Appeals include the following: First, under K.S.A. 1992 Supp. 59-3030, it is not mandatory that the district court conduct a hearing on an annual accounting. The district court may conduct a hearing on its own motion and shall conduct a hearing at the request of the conservator or an interested person.

Second, this court relied, in *Marcotte*, on *Citizens State Bank & Trust Co. v. Nolte*, 226 Kan. 443, 450, 601 P.2d 1110 (1979), where it was stated that "a conservatee under a voluntary conservatorship cannot contract or deed away his property inter vivos without the prior approval of the conservator or, where required by statute, the approval of the district court." The Court of Appeals stated that the court's specifying *prior* approval of the conservator suggests that approval of the district court also must be "prior."

Third, requiring prior court approval of transfers is "consistent with the realities of the conservatorship process in Kansas." The Court of Appeals' reasoning in this respect is that, because review of annual accountings is permissive, requiring court approval before a transfer is the only effective means by which the courts may supervise conservatorships.

Fourth, requiring prior court approval of transfers is "consistent with statutory schemes in other states." The Court of Appeals cites statutes from California, Connecticut, and Florida, which expressly require court approval before transfers of conservatorship assets. The presence of express prior approval requirements among the conservatorship acts of other states highlights the absence of such a requirement in Kansas' statutory scheme. Comparison with other states' statutes, therefore, might as easily suggest that prior approval was not contemplated by this state's legislature as that it was.

The principal ground on which Winter and Graff sought this court's review of the Court of Appeals' decision was that it con-

flicts with the Court of Appeals' decision in *In re Conservatorship of Holman*, 18 Kan. App. 2d 173, 849 P.2d 140 (1993).

Lewis Markley was conservator for Eleanor Markley Holman from 1980 until her death in 1988. At the beginning of the conservatorship, he sold Holman's Colorado residence to his daughter for $50,000 despite a recent appraisal at $78,000, and he purchased a small airplane with proceeds from cashing in Series "E" Bonds. He showed these transactions in the annual accounting. Notice was sent to interested parties, and a hearing was conducted on the accounting. It was approved by the district court. 18 Kan. App. 2d at 174.

When Holman died, Markley was appointed administrator of the estate. Written defenses were filed to the probate petition. The district court conducted a hearing which touched on the final accounting of the conservatorship as well as the probate of Holman's estate. The district court concluded that Markley "had negligently and unfaithfully dealt with the assets as Holman's conservator and as the administrator of her estate." 18 Kan. App. 2d at 175. Markley was surcharged $206,474.24.

Markley appealed. The Court of Appeals reversed on the ground that the district court's order approving the annual accounting was a final judgment which the doctrine of collateral estoppel prevents the parties from relitigating. No petition for review was filed.

Here is the Court of Appeals' statement of its *Holman* holding:

"We hold that, under K.S.A. 1992 Supp. 59-3031, settlement and allowance by the court of a conservator's accounting, after due notice, is an appealable final order. *It operates to relieve the conservator and the conservator's sureties from liability for all acts and omissions which are fully and accurately described in the accounting.* Such an order gives rise to the doctrine of collateral estoppel or res judicata, as the case may be." (Emphasis added.) 18 Kan. App. 2d at 176.

The Court of Appeals noted that the majority rule is that orders approving annual accountings do not operate as final judgments. 18 Kan. App. 2d at 175. The feature of the Kansas procedure which seemed to convince the Court of Appeals that the majority rule should not apply in this state is that the approval proceedings are not ex parte. The Court of Appeals noted:

"K.S.A. 1992 Supp. 59-3031 provides that the annual accounting will be settled and allowed after a hearing on the matter. Furthermore, notice of the hearing must be given to all interested parties. K.S.A. 1992 Supp. 59-3030. In addition, Kansas law provides that the decision of the court allowing an annual accounting is immediately appealable. K.S.A. 1992 Supp. 59-2401(10). The appeal must be taken within 30 days from the judgment. *In re Estate of Williams*, 238 Kan. 651, 655, 714 P.2d 948 (1986)." 18 Kan. App. 2d at 176.

In the present case, Winter and Graff contend that they were injured as a result of Hope's failing to advise them to file annual accountings. In rejecting their claim, the Court of Appeals concluded that there was no causal link between his failure and their injuries because court approval for transfers of conservatorship assets obtained after the transfers does not relieve a conservator of liability. This is contrary to the holding in *Holman*. A proviso in *Holman* that notice must be given to all interested parties and a hearing conducted in order for the court's post-transfer approval to relieve the conservator of liability does nothing toward reconciling *Holman* and the present case.

In the present case, the Court of Appeals placed some significance, for the purpose of determining *when* court approval was required, in a hearing on the annual accounting being permissive under K.S.A. 1992 Supp. 59-3030. It is not significant, however, in a direct inquiry whether there may be a causal link between not knowing of the annual accounting requirement and liability for unauthorized transfers. If Winter and Graff had filed annual accountings which fully and accurately described the conveyances made to themselves and their family members, there may have been a duly noticed hearing. It cannot be said that they would not have been relieved of liability by following the statutory procedure. As noted above, 59-3030 provides that a hearing is mandatory upon the petition of the conservator or an interested party. If Winter and Graff had been given that information along with the information that annual accountings are required, they could have made certain that adequate hearings were held on their transfers.

There is the possibility that the district court would not have approved of conveyances described in the annual accountings. The effect of the district court's disallowance of the conveyances

under our holding of *Marcotte* is that the K.S.A. 59-1704 double-value penalty for conversion applies even when a transfer is disallowed and the conservatorship assets are restored. However, there would remain an issue of proximate causation in the event of disallowance since the plaintiffs presumedly would not have made the gifts in the subsequent years and the resulting liability would have been prevented.

Hope argues that *Holman* and the present case are not inconsistent. His contention is that *Holman* does not reach the issue whether or not there is a requirement for prior court approval of inter vivos transfers of conservatorship assets. It is intrinsic in *Holman*, however, that prior approval is not necessary to relieve the conservator from liability for making an inter vivos gift.

We conclude that the holding in *Holman* is sound, that settlement and allowance of the conservator's annual accounting after proper notice and hearing is an appealable final order and operates to relieve the conservator from liability for all acts and omissions which are fully and accurately described therein. Such an order approving the annual accounting gives rise to collateral estoppel or res judicata, as the case may be.

In *In re Conservatorship of Marcotte*, 243 Kan. 190, 756 P.2d 1091 (1988), we did not state whether court approval must be obtained prior to making the gift in order to relieve the conservator of liability for conversion. Neither this court nor the legislature has specifically spoken to that question. Although our holding in *Marcotte* contemplated that the conservator should obtain court approval prior to making an inter vivos gift, it does not follow that the obtaining of court approval necessarily must predate the making of the gift to relieve a conservator from liability for conversion. Obviously, obtaining prior court approval would afford a conservator the greatest protection. In that case, the conservator would be relieved of any liability for making the subsequent gift. The conservator who makes the gift and then proceeds to obtain court approval pursuant to K.S.A. 1992 Supp. 59-3031 is at risk of being liable for conversion in the event the court does not approve the annual accounting.

With that distinction in mind, we conclude that in a voluntary conservatorship, settlement and allowance by the court of an annual accounting, after due notice to all interested parties and

a hearing, relieves the conservator from liability for making an inter vivos gift which is fully and accurately set out in the accounting. Having so concluded, we must reverse the district court's grant of summary judgment in favor of the defendants.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded for further proceedings.