No. 80,116

STEPHEN A. MILLER, D.O., *Appellant/Cross-appellee,* v. SLOAN, LISTROM, EISENBARTH, SLOAN AND GLASSMAN, A Kansas Partnership; THOMAS L. THEIS; DERENDA J. MITCHELL, *Appellees/Cross-appellants;* ST. PAUL FIRE & MARINE INSURANCE COMPANY, A Minnesota Corporation; THE STATE OF KANSAS; KANSAS HEALTH CARE STABILIZATION FUND; ROBERT HAYES, Executive Director of Kansas Health Care Stabilization Fund; and KATHLEEN SEBELIUS, in her official capacity as Commissioner of Insurance, *Appellees.*

(978 P.2d 922)

Opinion filed April 23, 1999.

*Stephen W. Brown*, of Megaffin, Brown & Lynch, Chtd., of Pratt, argued the cause, and *Gene E. Schroer*, of Schroer, Rice, P.A., of Topeka, was with him on the briefs for appellant/cross-appellee.

*Steve A. Schwarm*, special assistant attorney general, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, argued the cause, and *Wayne T. Stratton*, of the same firm, was with him on the brief for appellees State of Kansas, Health Care Stabilization Fund, and Robert Hayes.

*Paul W. Rebein*, of Shook, Hardy & Bacon, L.L.P., of Overland Park, argued the cause, and *Kenneth J. Reilly*, of the same firm, was with him on the brief for appellee St. Paul Fire & Marine Insurance Company.

*Hal D. Meltzer*, of Turner and Boisseau, Chartered, of Overland Park, argued the cause, and *Gabrielle Rhodes* and *Gregory N. Pottorff*, of the same firm, were with him on the briefs for appellees/cross-appellants Sloan, Listrom, Eisenbarth, Sloan & Glassman, Thomas L. Theis, and Derenda J. Mitchell.

*Damian C. Hornick*, of Kansas Insurance Department, was on the brief for appellee Kathleen Sebelius, in her official capacity as Commissioner of Insurance.

*Joseph R. Colantuono*, of Wehrman & Colantuono, of Leawood, and *Joshua L. Prober* and *Rachel M. Krug*, of McCullough, Campbell & Lane, of Chicago, appeared on the *amici curiae* brief for the American Osteopathic Association and Kansas Association of Osteopathic Medicine.

The opinion of the court was delivered by

LOCKETT, J.: Physician, who was alleged to have committed medical malpractice, filed an action against his malpractice insurer, the health care stabilization fund, and his attorneys and the attorneys' firm retained by the insurer to represent him. Physician claimed that the defendants had in bad faith settled the malpractice claim against him without informing him or obtaining his consent to the settlement. The district court granted each of the defendants' motions for dismissal and for summary judgment. Physician

appeals the district court's orders: (1) dismissing the fund and the Commissioner of Insurance based on governmental immunity; (2) granting summary judgment to physician's attorneys and the attorneys' law firm, and (3) granting summary judgment in favor of the physician's liability insurance carrier regarding the physician's claim of negligent and wrongful settlement of the patient's malpractice claim. Physician's attorneys and the attorneys' law firm cross-appealed, claiming the district court erred in finding the attorneys had breached their duty to inform a client. The attorneys also argue that the physician's failure to set aside the settlement agreement pursuant to K.S.A. 60-260(b)(6) bars his claim.

This civil action by Stephen W. Miller, D.O., arose out of a medical malpractice claim relating to his patient's injury that occurred in the surgical operating room of the Coffeyville Regional Medical Center, in Montgomery County, Kansas, on January 21, 1992. During the administration of anesthesia by a nurse anesthesiologist, the patient suffered severe brain damage.

Shortly after the injury, the patient's attorney contacted Miller and advised him that the patient intended to file a malpractice suit. Miller advised his professional liability insurance carrier, St. Paul Fire & Marine Insurance Company (St. Paul), of the patient's intention. St. Paul retained Thomas Theis, an attorney with Sloan, Listrom, Eisenbarth, Sloan & Glassman, to defend the claim. St. Paul's investigation of the claim included: a telephone interview with Miller, a peer evaluation of the medical event leading to the claim, an evaluation of pertinent medical records, and a poll of several attorneys to assess the possibility of Miller being found liable for the patient's injuries and to estimate the damages.

Following its investigation and upon determining that the injury presented a significant. risk of a verdict far in excess of Miller's policy limits, St. Paul tendered to the Kansas Health Care Stabilization Fund (Fund) payment equal to the policy limits of Miller's liability insurance policy. Theis was then retained to represent the interest of the Fund and to continue his representation of Miller during the settlement negotiations between the Fund and the patient.

K.S.A. 40-3410 provided the authority and procedure for the commissioner of insurance to negotiate and settle claims by a claimant on behalf of the Fund. The settlement agreement in this case provided that Miller did not admit liability for any wrong and that he denied he was negligent in the treatment of the patient. The settlement agreement also provided that the plaintiff released Miller from all claims, present and future. Because there was no pending action in Montgomery County, the petition was filed in Shawnee County.

On November 24, 1992, a settlement hearing was held in the Shawnee County District Court. Because Theis could not attend the hearing, Miller was represented by Derenda Mitchell, another attorney with Sloan, Listrom, Eisenbarth, Sloan and Glassman. Although Mitchell stated to the court that Miller had approved the settlement and did not object to the matter being heard in Shawnee County rather than Montgomery County, Miller had not, in fact, been notified of the settlement hearing or that the hearing was being held in Shawnee County, nor had Miller approved the settlement. The district court approved the settlement, finding it was valid, just, and equitable.

The settlement of the malpractice claim was later reported on the National Practitioner Data Bank in December 1992. Miller's malpractice insurance with St. Paul was terminated on July 30, 1993.

Miller alleged that he first became aware of the malpractice settlement after the settlement was reported to the National Practitioner Data Bank. On March 16, 1995, Miller filed this action alleging: (1) fraud by omission regarding the failure of his attorneys and their law firm to provide him notice of the malpractice claim settlement hearing, (2) fraud on the part of the Fund and the director of the Fund for settling the malpractice claim without giving him notice, (3) negligence on the part of his attorneys and their firm for failing to adequately research the claim and advise him of the settlement, (4) negligence on the part of the Fund and its director for failing to protect the rights and benefits provided to health care providers by the Health Care Stabilization Act, (5) denial of due process by the State, the Fund, and the Fund's director

for denying him the right to participate in the settlement hearing, (6) bad faith on the part of St. Paul in failing to protect his interest in settling the malpractice claim, (7) outrageous conduct against all the defendants, and (8) a request for a declaratory judgment regarding whether the Fund had authority to employ attorneys to represent him at the settlement hearing, and if so, whether he and other similarly situated defendants retain the right to employ their own attorneys to represent their interests at such hearings.

Miller's assertion that he was unaware of the settlement of the malpractice claim until it was reported on the National Practitioner Data Bank in December 1992 is not entirely correct. The incident that led to the patient's injuries occurred on January 21, 1992. On June 30, 1992, Miller filed for bankruptcy in the United States Bankruptcy Court, District of Kansas. On October 16, 1992, a month prior to the settlement hearing on November 24, 1992, Miller's attorney in the bankruptcy action filed a stipulation to lift the automatic stay. The motion moved the court to lift the stay to enable the patient to proceed against Miller:

"to the extent of any insurance proceeds which will indemnify Stephen A. Miller pursuant to any liability insurance policy or health care providers funds pursuant to the Health Care Stabilization Fund and insurance carriers providing malpractice insurance for Stephen A. Miller so as to pay Franklins damages as a result of any judgment, compromise or settlement in the proposed Montgomery County Action."

It is clear, therefore, that although Miller was not notified of the date of the settlement hearing by the attorneys representing him in the medical malpractice matter, he was aware of the pending settlement negotiations prior to the November 24, 1992, settlement.

A series of defendants' motions for summary judgment were heard by the district court. On August 27, 1996, the trial court granted summary judgment to Theis, Mitchell, and Sloan, Listrom, Eisenbarth, Sloan & Glassman as to the fraudulent and outrageous conduct claims. Regarding the negligence claim, the court found that the attorneys had breached a fiduciary duty owed to Miller and denied summary judgment to the attorneys. It allowed additional time for discovery regarding damages. On September 18,

1996, the district court dismissed all of Miller's negligence claims, including those against the attorneys, finding that Miller had failed to prove damages.

Miller appeals the grants of summary judgment and dismissal of the case. The attorney defendants cross-appeal the district court's determination of breach of duty. The American Osteopathic Association, as amicus curiae, submits a brief on the issue of Miller's damages.

## Standard of Review

When a motion to dismiss raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's complaint. K.S.A. 60-212(b)(6). Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim. *Grindsted Products, Inc. v. Kansas Corporation Comm'n*, 262 Kan. 294, 302-03, 937 P.2d 1 (1997).

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998).

To understand the district judge's rationale in granting summary judgment and dismissing Miller's action, we will review the Health Care Provider Availability Insurance Act (Act), K.S.A. 40-3401 *et seq.*, and *Harrison v. Long*, 241 Kan. 174, Syl. ¶ 2, 734 P.2d 1155 (1987).

## The Health Care Provider Insurance Availability Act

The power of the State to regulate and license professions is not limited to fitness to practice, but may also include requirements to protect and promote the public health, safety, morals, peace, quiet, and law and order. It is the public policy of the State to assure an adequate supply of health care providers and provide protection to patients who may be injured as a result of medical malpractice.

Under the Act, every resident health care provider, including physicians, is required to maintain a policy of professional liability insurance. The resident health care providers pay an annual surcharge to the Fund to qualify for the excess coverage. K.S.A. 40-3404(a). The duties of the Fund are created by statute. Subject to certain exceptions not applicable to this case, the Fund is responsible for paying that amount of any judgment in excess of the basic coverage of the resident health care provider. K.S.A. 40-3403(c)(1).

If a physician is sued for medical malpractice, his liability insurer initially defends the action. If the physician's basic insurer agrees to tender the limits of its coverage to settle a claim, but that claim exceeds the amount of such coverage, the insurance commissioner is authorized to negotiate with the claimant an amount in excess of the liability insurer's coverage to be paid out of the Fund. The Act contains certain procedural protections to the provider. K.S.A. 40-3410 provides that once the claimant and the commissioner reach a settlement, a petition is filed by the claimant with the court for approval of the agreement. The court sets the petition for hearing as soon as the court's calendar permits, and notice of the time, date, and place of hearing shall be given to the claimant, the health care provider or inactive health care provider, and to the commissioner. K.S.A. 40-3410(b). The district court then conducts a hearing at which the claimant, the health care provider, and the Fund may appear. If the court finds the settlement valid, just, and equitable, it will approve the settlement. If the settlement is not approved, the court orders the action to proceed. K.S.A. 40-3411.

Although it is clear that the health care provider must be provided notice of the hearing to approve the settlement, the statute creates no duty in the Fund to act in the interest of the health care

provider. The statute contemplates that the agreement regarding the settlement is reached in negotiations between the health care provider's insurer, the Fund, and the claimant. The commissioner may employ counsel to represent the interests of the Fund, and the court provides an objective assessment of the reasonableness of the settlement.

## Harrison v. Long

In *Harrison v. Long*, 241 Kan. 174, a medical malpractice action was filed against Dr. Long. After investigating the medical malpractice claim against Dr. Long, Dr. Long's insurance carrier, St. Paul, determined to settle its liability rather than defend the claim against Dr. Long. St. Paul notified the Fund of its decision. The Fund and the claimant then entered into negotiations and reached a settlement.

The settlement was approved by the Sherman County District Court over Dr. Long's objections. Dr. Long filed a motion for relief from the judgment contending that part of the Act, which allows the Fund to settle actions over the objections of the defendant physician, is unconstitutional. The district court found the Act constitutional. Dr. Long appealed. The Fund was allowed to intervene in the appeal.

The *Long* court found that under the procedural framework of the Act, a health care provider is given the opportunity to represent his interests to the court at the settlement hearing, thus maintaining his procedural due process rights under the Act. It noted that St. Paul and the Fund settled the claim against the physician without any personal liability to Dr. Long. It determined that Dr. Long had no right to complain that the action was settled because the State had a significant overriding countervailing interest. The *Long* court concluded that the provisions of the Act, K.S.A. 40-3401 *et seq.* (Ensley 1981), did not deprive a health care provider of a property right, *i.e.*, the right to defend an action, or a due process right. The *Long* court determined that a health care provider has no constitutionally protected right to require that a plaintiff's action continue for the sole purpose of allowing the health care provider to vindicate himself or herself.

## BAD FAITH CLAIM AGAINST ST. PAUL

On June 7, 1996, the district court here granted summary judgment to St. Paul. The district court noted that the contract between Miller and St. Paul provided that St. Paul could settle any suit or claim against its insured if St. Paul considered settlement appropriate. The court determined because St. Paul had exercised its contractual right to settle the claim within the monetary limits of Miller's policy, Miller had no claim for breach of good faith.

As to the failure of St. Paul to notify Miller of the settlement hearing, the district court found that St. Paul's duties to Miller terminated when St. Paul tendered payment equal to policy limits to the Fund pursuant to K.S.A. 40-3410. After that point the Fund, not St. Paul, had a duty to notify Miller of a future settlement hearing. In addition, the court held that pursuant to K.S.A. 60-260(b), a motion to set aside the judgment was a prerequisite for a separate action claiming relief for wrongful settlement. Because Miller had failed to set aside the judgment, his claims for wrongful settlement against St. Paul were barred.

Miller contends that the trial court erred as a matter of law in finding that he cannot sustain a cause of action for bad faith against St. Paul. Miller asserts that notwithstanding the terms of its policy, St. Paul was aware that he opposed settlement, and it nevertheless settled the case. Miller contends that St. Paul's action in settling the case was bad faith, and St. Paul is responsible for the damages resulting from the settlement.

Case law in Kansas concerning the duty of an insurer to settle actions against the insured focus on the failure of the insurer to accept or initiate a settlement offer. See, *e.g.*, *Farmers Ins. Exchange v. Schropp*, 222 Kan. 612, 567 P.2d 1359 (1977); *Snodgrass v. State Farm Mut. Auto Ins. Co.*, 15 Kan. App. 2d 153, 804 P.2d 1012, *rev. denied* 248 Kan. 997 (1991). The Kansas Court of Appeals held in *Saucedo v. Winger*, 22 Kan. App. 2d 259, Syl. ¶ 3, 915 P.2d 129 (1996), that where an insurance policy explicitly reserves the right to settle to the insurer, an insured cannot complain that the insurer *settles or refuses* to settle within policy limits *absent a showing of bad faith or negligence on the part of the insurer*. The

implication is a bad faith settlement can be the basis of a complaint even where the insurer settles a claim within policy limits.

The issue of bad faith of the insurer in settlement negotiations has been addressed in other jurisdictions. In *Shuster v. South Broward Hosp. Dist.*, 591 So. 2d 174 (Fla. 1992), the court considered whether an insurer could be sued for bad faith where it had settled a case within the policy limits and the settlement caused other incidental damages to the insured. In *Shuster*, a physician sued his insurance company for settling a malpractice action against him well within the policy limits. The physician claimed that the insurance company should not have settled the case because of questionable liability. The settlement had caused the physician to be investigated by the Division of Professional Regulation. The physician claimed that the resulting investigation damaged him. The court ruled that the policy of insurance gave the insurer the right to defend and settle claims as it "deems expedient." 591 So. 2d at 177. The court determined that the insurer had broad discretion as to when and how to settle a case. The court recognized that the language of the contract would control, and the "deems expedient" language of the contract allowed the insurer to be guided by its own self-interest when settling claims within the policy limits. 591 So. 2d at 177.

In *Bleday v. OUM Group*, 435 Pa. Super. 395, 645 A.2d 1358 (1994), *appeal denied* 540 Pa. 591 (1995), the Superior Court of Pennsylvania considered a claim by a physician that his liability insurance carrier had settled a malpractice claim against him in bad faith. Over the physician's objections, the insurance company had settled the claim to avoid the cost of litigation and the uncertainties of a jury trial. After a review of case law from other jurisdictions, the Pennsylvania court concluded that although judicial deference must be given to the decision of an insurance company to settle a claim within the policy limits, a claim for bad faith may, in *limited circumstances*, be asserted against the insurance company notwithstanding an expediency provision. 435 Pa. Super. at 399.

The *limited circumstances* contemplated by the Pennsylvania court included situations where there are multiple parties to a law-

suit and the insurer indiscriminately settles with one or more of the parties for the full amount of the policy, exposing the insured to an excess judgment from the remaining parties in the suit or where the insurer settles a claim without regard to the fact that it may be barring a counterclaim of the insured. Based on the facts of the case and the speculative nature of the damages pled by the plaintiff, the Pennsylvania court held that the plaintiff had failed to sufficiently plead a cause of action in bad faith. 435 Pa. Super. at 402-03.

K.S.A. 40-3410 provides that when the insurer has agreed to settle liability on a claim and the claim is an amount in excess of policy limits, the Fund assumes control of the case, continuing negotiations and bringing the settlement before the district court for approval of the settlement.

Pursuant to the terms of its insurance contract, St. Paul chose not to defend the malpractice claim against Miller. Pursuant to the Act, it agreed to settle Miller's liability to the claimant within its policy limits and notified the Fund of its intention. Under the Act, the insurance commissioner was then entitled to negotiate an amount to be paid from the Fund as a settlement or continue to defend the action against Miller. Similar to Miller's contract with his liability carrier, the Act requires no waiver or consent of the health care provider for the Fund to settle the action with the claimant without the consent of the health care provider.

After St. Paul tendered its policy limits to the Fund, the Fund, pursuant to statute, retained the attorneys who had been initially employed by St. Paul, to continue representing Miller and the Fund's interest during negotiations of the claim. Therefore, the Fund, not St. Paul, employed the attorneys to represent Miller prior to the settlement hearing. St. Paul did not breach its duties of loyalty and allegiance by not notifying Miller of the settlement hearing or retaining attorneys on his behalf who failed to provide him with notice of the settlement hearing. The district court's grant of summary judgment in favor of St. Paul was not error.

## NEGLIGENCE CLAIMS AGAINST GOVERNMENT DEFENDANTS

On June 22, 1995, the trial court dismissed the case against the State of Kansas, the Fund, and the Fund's director, Robert Hayes, based on governmental immunity. The court found that the State and government defendants were immune from Miller's claim of negligent settlement of the malpractice claim. Miller contends that the trial court erred because the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.*, provides statutory consent to sue the government and government employees.

The KTCA states that unless a statutory exception to liability applies, a governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state. K.S.A. 75-6103(a); *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, Syl. ¶ 1, 877 P.2d 430 (1994).

To prevail on the negligence and fraud claims against the government defendants, Miller must prove that the Fund owed him a duty, the Fund breached that duty, and Miller sustained damages caused by the breach. On September 18, 1997, the district court dismissed all of Miller's negligence claims, finding that Miller had failed to prove damages. Miller asserts that the Fund has a duty to settle malpractice claims only when reasonable to do so.

We observe that in third-party claims, a private insurance company, in defending and settling claims against its insured, owes a duty to the insured not only to act in good faith but also to act without negligence. *Farmers Ins. Exchange v. Schropp*, 222 Kan. 612. However, the Fund is not a private insurance company and is not analogous in all respects to a private insurance company. For instance, unlike a private insurance company, the Fund, under the Act, is immune from bad faith liability. K.S.A. 40-3412(c). See *Aves v. Shah*, 258 Kan. 506, 519, 906 P.2d 642 (1995) (holding bad faith on the part of the Fund in refusing to settle a claim merely to avoid paying a large settlement does not give rise to an action against the Fund by the health care provider for damages).

With certain exceptions not applicable to this case, the Act provides that it is the Fund, not the provider, which is responsible for paying any difference above the coverage of the liability insurance. See K.S.A. 40-3403(c). It is, therefore, implicit in the Act that where claims are settled within the Fund's liability limits, providers relinquish their right to prevent a settlement. To allow physicians to control the defense of malpractice claims against them and reach their own decisions to continue or to settle the action would undermine the whole purpose and the financial structure of the Act. *Harrison*, 241 Kan. at 181.

Because the Fund had no duty under the KTCA to Miller and the settlement created no liability in excess of that provided by the Act for negligent failure to settle a claim or failure to settle a claim in good faith, Miller's negligence and fraud claims against the Fund cannot succeed. The trial court did not err in granting summary judgment in favor of the Fund.

## OUTRAGEOUS CONDUCT, FRAUD, AND NEGLIGENCE CLAIMS AGAINST ATTORNEYS
### Tort of Outrage

To prove the tort of outrage, a litigant must show: (1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe. *Smith v. Welch*, 265 Kan. 868, 876, 967 P.2d 727 (1998).

The tort of outrage has two threshold requirements that the district court must determine: (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff was of such extreme degree the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it. 265 Kan. at 876. In order for conduct to be deemed sufficient to support the tort of outrage, it must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 805, 897 P.2d 123 (1995).

The district court reasoned that for liability to flow from legal malpractice, these elements must exist: (1) There must be an attorney-client relationship giving rise to a duty; (2) the attorney must have breached that duty by act or omission; (3) the breach of duty must have proximately caused injury to the client; and (4) the client sustained actual damages. *Phillips v. Carson*, 240 Kan. 462, 476, 731 P.2d 820 (1987).

The court found that it was undisputed that the attorneys were retained by St. Paul to represent the interests of Miller. The duty created by this relationship is fiduciary in character. Such a relationship binds the attorney the highest degree of fidelity and good faith to his client on account of the trust and confidence imposed.

Regarding the breach of duty, the court observed that an omission which leaves a client uncertain as to material aspects of his legal representation constitutes breach of the fiduciary duty owed by an attorney. *Winter v. Hope*, 253 Kan. 678, 861 P.2d 1282 (1993). This breach of duty is underscored by the Kansas Rules of Professional Responsibility (KRPC) adopted in this state. Specifically, KRPC 1.4 (1998 Kan. Ct. R. Annot. 296) provides:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

It was undisputed that the attorneys failed to provide Miller with notice of a settlement hearing. A reading of the pleadings, most favorable to Miller, indicates the attorneys accepted representation of a client without even making the client aware of the representation. An act of omission rising to this level cannot satisfy the demands of a fiduciary duty requiring an attorney to act with due regard to the interests of the one reposing the confidence.

While there appears to be no question that the defendants breached their duty to Miller, it does not necessarily follow that this violation caused Miller damage. There can be no finding of malpractice absent a showing of both departure from standards and causal injury. *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, 736 P.2d 882 (1987); *Phillips v. Carson*, 240 Kan. 462.

In addition to the two threshold requirements for a negligence claim, "there can be no recovery for emotional distress by negligence unless accompanied by or resulting in physical injury." *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 806, 897 P.2d 123 (1995) (citing *Humes v. Clinton*, 246 Kan. 590, 598, 792 P.2d 1032 [1990]).

In the instant case, Miller asserts he is entitled to recover damages for the alleged emotional distress caused by the defendants' actions. It is undisputed that Miller had no notice of the settlement hearing and that the defendants represented Miller's interests at various times. In Miller's pleadings, however, there is insufficient claim that the attorneys' action was willful, wanton, or even purposeful. Reading Miller's pleadings to their most favorable interpretation do not show conduct rising to the level of "extreme and outrageous." Additionally, Miller fails to provide evidence of any physical manifestation of injury that occurred as a result of alleged emotional distress.

Conduct which is not extreme and outrageous coupled with a lack of evidence of physical manifestation of injury fail to meet the threshold requirements of the tort of outrage. The attorneys' actions were not so extreme in degree as to be regarded as utterly atrocious or intolerable in a civilized society. Additionally, any claim for emotional distress based on the attorneys' conduct must fail without physical manifestation of injury that occurred as a result of the alleged emotional distress; therefore, the claims based on the tort of outrage and emotional distress fail as a matter of law.

The district court determined that the attorney defendants' actions in failing to keep Miller apprised of the progress of his case and in failing to notify him of the settlement hearing was a serious breach of fiduciary duty. The court held, however, that the conduct did not rise to the level of conduct so extreme and outrageous as to permit recovery on the tort of outrage.

We agree and affirm the district court's grant of summary judgment on the tort of outrage.

### Fraud By Silence and Negligence

Under the rules of civil procedure, fraud is a special matter. The applicable statutory requirement reads:

"(b) Fraud, mistake, conditions of the mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally." K.S.A. 60-209(b).

See *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, Syl. ¶ 7, 479 P.2d 875 (1971).

The district judge held that the concealment alleged by Miller did not rise to the actionable level of fraud by silence under current Kansas law. Additionally, the court stated that Miller failed to plead fraud with sufficient particularity as required by K.S.A. 60-209(b).

On appeal Miller contends that he alleged facts in his pleadings with sufficient particularity and provided sufficient evidence of fraud by silence to withstand a motion for summary judgment on the fraud claim.

In all averments of fraud, the circumstances constituting fraud shall be stated with particularity. K.S.A. 60-209(b). To establish fraud by silence, the plaintiff must show by clear and convincing evidence the following elements: (1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to the plaintiff; (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to plaintiff. *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, Syl. ¶ 6, 918 P.2d 1274 (1996).

In Miller's first amended petition, he specifically pled fraud as a count against the attorney defendants. Miller alleged that the attorney defendants had knowledge of material facts which he did not have and could not have discovered by the exercise of reasonable diligence. The material facts alleged in Miller's petition were that the attorneys were authorized to act as his legal counsel, yet they negotiated a settlement, scheduled a settlement hearing, and participated in the hearing for the purpose of acquiring court approval for payments to be made on his behalf for which he received

no benefit. Miller also alleged that others with this knowledge were prohibited from communicating with him because he was represented by the attorneys. Miller further alleged that the attorneys were under an obligation to communicate the material facts to him, they intentionally failed to do so, and he justifiably relied on an assumption that any attorney retained to represent him would communicate material facts to him. Miller stated that he sustained substantial damages as a direct and proximate result of the attorneys' failure to communicate with him. The delineated damages were: increased medical malpractice insurance premiums; increased charges imposed by the Fund; decreased patient referrals; lost income; the impugning of his professional confidence; embarrassment, humiliation, anxiety, and depression; and time and monies expended to obtain replacement medical malpractice insurance.

Clearly, Miller averred fraud with particularity in compliance with K.S.A. 60-209(b). However, this does not dispose of the issue because the pleadings and depositions of Miller do not show that Miller sustained damages as a result of the attorneys' omissions or silence.

The damages delineated by Miller in his petition were not damages sustained as a result of the defendant attorneys' failure to inform Miller of developments in the malpractice claim. The damages identified in Miller's petition were sustained by Miller as the result of having a significant malpractice claim against him. Those damages do not support any claim that the actions or omissions of the defendants in defending Miller on the malpractice claim caused Miller damages.

Based on a lack of identifiable damages, we affirm the trial court's dismissal of Miller's claims of outrageous conduct, fraud, and negligence.

## Wrongful Settlement

K.S.A. 60-260(b)(6) provides that upon a motion, the court may relieve a party from a final judgment, order, or proceeding for any reason justifying relief from the operation of the judgment. The district court declined to grant Miller relief for wrongful settle-

ment, finding that Miller had waived that right by failing to exercise his statutory right to relief from the judgment.

Miller contends that a motion to set aside wrongful judgment is not a condition precedent to maintaining an action seeking compensation for such. Miller relies on *Cook v. Connolly*, 366 N.W.2d 287 (Minn. 1985); *Baldridge v. Lacks*, 883 S.W.2d 947 (Mo. App. 1994), *reh. denied* August 20, 1994; and *Novack v. Newman*, 709 S.W.2d 116 (Mo. App. 1985), to support his position.

It is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matters in issue before the court. *Shanks v. Nelson*, 258 Kan. 688, Syl. ¶ 2, 907 P.2d 882 (1995).

Miller's claims of negligence, bad faith, outrageous conduct, and fraud were determined by the district court when it granted the defendants' motions for summary judgment and in dismissing the action. Because none of Miller's claims were sustainable and we affirm the trial court's rulings, the issue of whether Miller waived his claims by failing to move the court to set aside the settlement is moot.

Because the trial court's dismissal of Miller's case is affirmed, the issues raised in cross-appeal by the attorneys and their firm are moot and need not be addressed.

Affirmed.

ALLEGRUCCI, J., not participating.

JAMES W. PADDOCK, Senior Judge, assigned▐