NOT DESIGNATED FOR PUBLICATION

No. 117,498

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BURL W. PECKMAN,
*Appellant*,

and

SHEMENE PECKMAN and
CHARLIE PECKMAN,
*Plaintiffs*,

v.

JEFFREY D. THOELE and SHEILA THOELE,
*Appellees*.


MEMORANDUM OPINION

Appeal from Linn District Court; STEVEN C. MONTGOMERY, judge. Opinion filed May 4, 2018. Affirmed.

*Matthew T. Geiger* and *Benjamin R. Prell*, of Geiger Prell, LLC, of Overland Park, for appellant.

*Daniel R. Zmijewski* and *Christopher Dove*, of DRZ Law, LLC, of Kansas City, Missouri, for appellees.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

PER CURIAM: A jury found Burl Peckman (Peckman) committed fraud by silence, causing a loss to Jeff and Sheila Thoele (Thoeles) in the amount of $308,589.50. Peckman appeals, claiming the evidence was insufficient to support both the finding of

1

fraud and the damage award. Since we find no basis to overturn the jury's conclusions, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Jeff Thoele (Thoele) had no prior experience in the business of growing crops. He was running a concrete foundation company when Peckman approached him about buying a farm. Peckman had been farming all his life and was looking for an investor. He knew Thoele had no farming experience. Thoele believed Peckman would teach him about farming.

In August 2011, Burl and his wife, Shemene Peckman, and the Thoeles agreed to buy a Montana farm together and split the expenses and profits. To that end, each family contributed $1,250,000 to buy the Borderview ranch and, notwithstanding the considerable investment, they memorialized their understanding in a one-paragraph agreement stating that they would farm the purchased land as "one farm," all expenses would be shared equally, equipment purchased would be shared equally, and each had the first option to buy the other's share in the event one owner needed out of the arrangement. They agreed to pay expenses equally before any distribution of proceeds, whether or not the farm was profitable.

At Peckman's request, his 22-year-old son, Charlie Peckman (Charlie), moved to Montana to work at the farm. Charlie worked more hours at the Borderview ranch than anyone else. In September 2011, Peckman asked Thoele to sign two power of attorney documents giving Charlie authority to make unilateral decisions concerning crop insurance for the farm.

In 2013, the Peckmans purchased a second, smaller farm near Cohagen, Montana. The Thoeles did not contribute to the purchase of that farm, but they jointly owned the

2

equipment that would be used there. The two families agreed the Peckmans would receive the first 25 percent of the proceeds from the Cohagen farm and the Peckmans and Thoeles would then split the remaining 75 percent.

By August 2014, Thoele had decided to end the relationship. He cited various complaints, including a breakdown in communication and a lack of money coming in. Thoele claimed he was hauling grain but not seeing the checks or how the money was being distributed, the work was not getting done in a timely manner, and the equipment was always breaking down. Thoele believed Peckman was supposed to be teaching him about farming and insurance but contended he was not a good teacher. In that strained environment, Peckman agreed to buy out Thoele. By September 2014, the parties had engaged legal counsel.

On October 6, 2014, the parties agreed the Peckmans would pay the Thoeles $2,214,338 for their share of the land and equipment. The proceeds of the wheat would be split equally. Through an e-mail communication, the parties agreed: "All wheat hauled and/or stored this year (2014) is excluded from this dollar figure as well as any insurance proceeds." After October 6, 2014, Peckman and Thoele no longer communicated. Thoele stopped working on the farm and did not pay any expenses. Later that month, Charlie hired Gregg Heide to measure the grain bins because Peckman and Thoele disagreed significantly on the quantity of grain they had. In November 2014, at the request of Frontier Farm Credit, the prospective lender for Peckman's buyout, the jointly owned Montana farm was appraised. The appraisal valued the farm at $4,500,000.00

Thoele refused to close on the Borderview sale and transfer the land because he believed the Peckmans were trying to "get away with the grain." On April 16, 2015, the Peckmans filed this lawsuit against the Thoeles, seeking specific performance. The Thoeles filed several counterclaims against the Peckmans, including breach of contract,

fraud by silence, breach of fiduciary duty, and negligence. They also asserted a claim against Charlie for negligence.

At some point in 2015, Thoele went to Montana and took photos of the farm. He saw wheat being stored in large bags or tubes on the farm instead of in an elevator. Charlie hired Heide to measure the wheat again in November 2015.

In November 2015, the relationship formally ended as the Thoeles conveyed their interest in the Montana farm and equipment to the Peckmans for the sum of $2,214,338. In December 2015, the Peckmans paid the Thoeles $159,489.46 for the 2014 wheat harvested from Borderview. Nonetheless, the disputes over the grain and insurance continued, and in February 2017 the case was tried to a jury on the Peckmans' breach of contract claim and the Thoeles' counterclaims and cross-claim.

The jury unanimously found that both the Peckmans and Thoele breached their contract with the other, but no damages resulted; neither Burl nor Charlie Peckman was negligent for failing to purchase hail insurance; Peckman committed fraud by silence, resulting in damage to the Thoeles in the amount of $308,589.50; and Peckman breached a fiduciary duty to the Thoeles, but no damages resulted.

The Peckmans moved for judgment as a matter of law both before and after the verdict, which the district court denied. The court entered judgment on the jury's verdict on April 3, 2017.

Peckman timely appeals the jury verdict and the $308,589.50 judgment against him. Additional facts will be presented as relevant to the discussion below.

4

ANALYSIS

*Standard of review*

"When a verdict is challenged for insufficiency of the evidence or as being contrary to the evidence, it is not the function of this court to weigh the evidence or pass on the credibility of the witnesses. If the evidence with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, will support the verdict, the verdict will not be disturbed on appeal. [Citation omitted].

"The existence of fraud is a question of fact and we are limited to determining whether the verdict is supported by substantial evidence." *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 461, 738 P.2d 1210 (1987).

At trial, the Thoeles alleged Peckman committed fraud by silence by failing to provide sufficient information regarding the grain proceeds on the Borderview and Cohagen farms. They claimed Peckman owed them money for grain sales from both 2014 and 2015 and alleged he did not provide adequate records showing the total grain sold from the farms. They further asserted the only documents he could provide to identify his farm-related costs were unorganized receipts and handwritten notes.

To establish fraud by silence, the plaintiff must show each of the following by clear and convincing evidence: (1) The defendant had knowledge of material facts that the plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) the defendant was under an obligation to communicate the material facts to the plaintiff; (3) the defendant intentionally failed to communicate to the plaintiff the material facts; (4) the plaintiff justifiably relied on the defendant to communicate the material facts to the plaintiff; and (5) the plaintiff sustained damages as a result of the defendant's failure to communicate the material facts to the plaintiff. The existence of fraud is a question of fact. *Stechschulte v. Jennings*, 297 Kan. 2, 21, 298 P.3d 1083 (2013); *Chism v. Protective Life Ins. Co.*, 290 Kan. 645, 654, 234 P.3d 780 (2010).

5

*Issues presented*

Peckman argues the evidence the Thoeles presented was insufficient to support the jury's unanimous verdict. He divides his argument into four segments: (1) There was no evidence of a material fact the Thoeles did not or could not have discovered through reasonable diligence; (2) the Thoeles did not justifiably rely on him to communicate material facts after they stopped communicating and engaged their own counsel; (3) there was no evidence of a causal connection between the Thoele's theory of liability and the claimed damages; and (4) there was not substantial evidence to support the damages awarded by the jury.

*Evidence of material facts not discoverable through reasonable diligence; justifiable reliance*

The Thoeles cite several categories of evidence upon which the jury could have relied to find Peckman concealed material information about the finances of the partnership: grain not delivered to the elevator, but stored instead on the farm in large bags holding an unknown quantity of grain; Charlie's failure to use the electronic mapping feature on the combine to measure harvested grain in the field; Charlie's testimony about changing the information given to elevators about grain ownership and the manner by which the source of delivered grain was identified; Charlie's deposit of a $392,000 crop insurance check into a personal account rather than the partnership's joint account; Peckman's failure to share patronage checks with the Thoeles; the use of a non-partnership bank account, created after buyout negotiations began, for deposit of grain proceeds; and evidence from Thoeles' expert witness of unpaid profits from grain sales.

Peckman first contends none of the categories of information where the Thoeles assert concealment was impervious to the application of reasonable diligence. He argues the use of the grain bags was obvious—they sat in the field and were photographed by the

Thoeles; the Thoeles knew grain ownership was placed in Charlie's name as part of a scheme to gain crop insurance for a much-reduced premium; the grain records were produced in discovery upon request; and the Thoeles could have purchased their own appraisal of the partnership land if they wished.

Peckman also claims that after the Thoeles' counsel threatened litigation and direct communication between the parties ended, they had no basis for relying on him to provide them with material information. Therefore, he reasons, the Thoeles fail to show any claimed reliance was justifiable. Peckman asserts all alleged acts of concealment arose "after the parties stopped talking and hired lawyers," including: the use of grain bags for on-farm storage of grain; documentation of grain deliveries, grain sales, and expenses for 2014 and later; and the appraisal ordered by Frontier Farm Credit.

In response, the Thoeles point to the standard of loyalty among partners described in K.S.A. 56a-404(b)(2), and they argue our Supreme Court has declared the existence of a fiduciary duty to disclose financial information until a partnership is actually terminated:

> "The dissolution of a partnership is the change in the relationship of the partners caused by any partner ceasing to be associated in carrying on the business. . . . [D]issolution occurs at the point when the partners cease to seek business as a partnership; but the rights and obligations of the partners do not cease until all affairs of the partnership are liquidated or satisfactorily transferred to another entity." *Craig v. Hamilton*, 213 Kan. 665, 669, 518 P.2d 539 (1974).

They further maintain they could not have discovered the precise amount of grain Peckman concealed. Because of the problems of their business relationship, the Thoeles contend only the Peckmans were working on the farm by the latter part of 2014, which vested Peckman with superior knowledge and required them to rely on him for truthful information about grain planted, harvested, and sold, and the associated expenses. The

Thoeles argue they made every effort to discover how much grain was being produced—by traveling to Montana and hiring an expert to determine the projected proceeds from the insurance and government reports.

Fraud by silence requires proof that the other party could not have discovered the omitted fact through reasonable diligence. But where lack of knowledge by a plaintiff would render investigation futile, he or she may rely on the representations of the defendant. Kansas law "does not deprive a defrauded party of relief because he had opportunity to investigate when his lack of knowledge was such that the investigation would disclose nothing to him." *Wolf v. Brungardt*, 215 Kan. 272, 282, 524 P.2d 726 (1974). In *Wolf*, the plaintiff claimed he was defrauded by the defendant because he invested in the defendant's business, but the defendant failed to disclose the business' bad financial condition. The court found plaintiff could not have discovered the fraud with investigation because he had no business experience and the records of the business' finances were "sketchy at best." There was no evidence that plaintiff could have discovered the business' financial condition other than by requesting information directly from those who defrauded him, and they made positive assertions about the good condition of the business. Moreover, the duty to discover the facts is reduced when the parties are in a fiduciary relationship. 215 Kan. at 283-84. A party is justified in relying without investigation upon another to communicate the facts material to a transaction unless he or she knows or has reason to know of facts which make his or her reliance unreasonable. *Goff v. American Savings Association,* 1 Kan. App. 2d 75, 82, 561 P.2d 897 (1977).

Peckman relies on *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 347, 918 P.2d 1274 (1996), and *Britvic Soft Drinks Ltd. v. ACSIS Technologies, Inc.*, 265 F. Supp. 2d 1179, 1190-91 (2003), for the proposition that he had no duty to communicate material facts to Thoele because at the relevant time they each were represented by counsel.

In *OMI Holdings*, OMI had been involved in a complex lawsuit involving patent, antitrust, and other issues that ended in a mistrial after the other party's expert witness had contacts with jury members. OMI brought suit against the witness for embracery, negligence, and fraud. OMI alleged the witness committed fraud when he failed to inform the trial court or OMI of his contacts with the jurors, resulting in the mistrial and OMI's unnecessary expenditures on fees and other costs. OMI claimed the witness had a duty arising out of equity and good conscience to disclose his misconduct to OMI and to the court. The court found no duty to disclose existed on that basis, noting that litigation was an adversarial process and, although there may have been a duty to disclose to the court, there was no duty imposed by "equity and good conscience" to disclose to an adverse party. 260 Kan. at 347.

In *Britvic*, Peckman's second cited authority, plaintiff Britvic asserted multiple causes of action against defendant ACSIS arising from the alleged breach of a software maintenance and support agreement. ACSIS counterclaimed alleging, in part, fraud arising from statements made by Britvic's agents concerning settlement of a dispute. ACSIS contends Britvic breached a duty imposed because of Britvic's superior knowledge that Britvic would sue to enforce rights under an agreement between the parties. Britvic argued, and defendant did not dispute, that the parties were in an arms-length, nonfiduciary relationship. The court characterized the superior knowledge argument as "disingenuous," since both parties were represented by counsel during their negotiations and both were sophisticated business entities. 265 F. Supp. 2d at 1190-91.

Peckman's authorities are unhelpful given the facts of this case. Unlike the situation in either *OMI* or *Britvic*, the jury found the Thoeles and Peckman *were* in a fiduciary relationship, which Peckman breached, although no damages resulted. The jury was instructed that a fiduciary relationship is "any relationship of blood, business, friendship or association in which one of the parties places special trust and confidence in

9

the other." See PIK Civ. 4th 125.01. Partners owe each other fiduciary duties by statute. See K.S.A. 56a-404(a).

It is not the role of this court to redetermine which parties' evidence and argument was most persuasive in light of the law—the jury has reached that decision. Peckman contends the evidence was insufficient to support the jury's verdict. A different panel of jurors might have agreed with him in the sense that "sufficiency" relates to persuasiveness. But sufficiency for our purposes is different, and we find the record contains sufficient evidence, viewed in the light most favorable to the Thoeles, to support the jury's finding that it was highly probable Peckman committed fraud by silence, which necessarily included findings of concealment of material facts and justifiable reliance. Peckman's argument concerning those issues fails.

*Causal connection to the damages; evidence of damages*

Peckman next contends there was no evidence that any of the Thoeles' allegations of fraud caused them to incur over $300,000 in damages. The Thoeles respond it was Peckman's failure to fully disclose the crop yields from 2014 and 2015 that caused them to lose profits, which were calculated with reasonable certainty by their expert witness.

In support of his contention about the need for a nexus between claims and damages, Peckman directs us to *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 978 P.2d 922 (1999). In *Miller*, a doctor who had been the subject of a malpractice action that was resolved by settlement, brought a fraud action against his attorneys alleging they failed to communicate material facts about the suit and the settlement. Miller alleged he sustained damages as the direct and proximate result of the attorneys' failure to communicate with him, consisting of:

"increased medical malpractice insurance premiums; increased charges imposed by the [Kansas Health Care Stabilization] Fund; decreased patient referrals; lost income; the impugning of his professional confidence; embarrassment, humiliation, anxiety, and depression; and time and monies expended to obtain replacement medical malpractice insurance." 267 Kan. at 261.

The court held the damages Miller alleged were not sustained as a result of his attorneys' failure to communicate with him. Rather, the damages were sustained by Miller "as the result of having a significant malpractice claim against him." 267 Kan. at 261.

The sequence of the facts in this case, and the nature of the damages claimed, differ from those in *Miller* in important respects. In *Miller*, all of the damages Miller claimed, to the extent they could be proven, arose from the existence of the malpractice claim itself, independent of any failures by his attorneys. In contrast, the jury here had evidence before it that could support a causal connection between Peckman concealing material information about the 2014 and 2015 grain proceeds and the Thoeles suffering the loss of their share of those proceeds.

Peckman finally asserts the jury awarded damages to the Thoeles that were "entirely speculative." He argues the methodology used by the Thoeles' expert, Charles Brown, was fatally flawed because he used crops planted instead of crops sold, did not account for crop loss before and during harvest, did not use weighted measurements, did not account for deductions made at the elevator, and ignored winter wheat that was sold as spring wheat. The Thoeles respond that Brown's testimony established their damages with a sufficient degree of certainty, using production reports from the insurance company that were then compared to production reports Charlie had submitted to the federal government under penalty of perjury.

When we consider the jury's award of damages, we review the evidence the jury had before it in the light most favorable to the Thoeles.

11

"Damages need not be established with absolute certainty, and the jury can estimate damages using a reasonable basis for computation and the best evidence available under the circumstances. However, claims for damages that are conjectural and speculative cannot form a sound basis for an award." *Kendrick v. Manda*, 38 Kan. App. 2d 864, 871, 174 P.3d 432 (2008).

Brown's testimony provided a reasonable basis for the jury to compute damages. He used subpoenaed insurance reports that listed the number of acres farmed each year and the bushels produced that year. Those numbers were reported by Charlie both to the insurance company and the federal government and he had to sign off on their accuracy. Brown then determined the fair rate for grain sales in the given year from settlement sheets that reflected how much per bushel the grain was being sold for by the Peckmans at the elevator. He subtracted $.50 per bushel for deductions made at the elevator, then multiplied the number of bushels produced by the fair price per bushel.

The Thoeles asked for $405,673.42 for the grain proceeds. The jury returned a verdict for $308,589.50. Peckman provides no persuasive basis for overturning the jury's damage award. Clearly, Peckman disagrees with that result and others may reasonably agree with him. Again, however, that is not the test. The jury had reasonable evidence to consider without speculating on the Thoeles' loss.

Affirmed.