Henry HILL, Plaintiff,

v.

Brian MCHENRY, et al., Defendants.

Civil Action No. 99–2026–CM.

United States District Court,
D. Kansas.

June 12, 2002.

Robert K. Ball, Kansas City, MO, H. George Lafferty, Jr., Teasdale & Lafferty, Kansas City, MO, for Plaintiff.

Brian McHenry, Bonner Springs, KS, Pro se.

Mark A. Jess, Bryan Cave, LLP, Kansas City, MO, Jerry M. Hunter, Bryan Cave, LLP, St. Louis, MO, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff Henry Hill brings this action asserting numerous employment-related claims. On February 20, 2001, this court issued a Memorandum and Order dismissing several defendants from the lawsuit and finding that plaintiff had failed to state a claim on three counts. This matter is before the court on Defendants Tele–Communications, Inc., TCI Communications, Inc., TCI of Overland Park, Inc., Dimitri Ramos, Jim Bell, and Clyde Gentry's Motion for Summary Judgment (Doc. 153) and Defendants' Motion for Leave to File Original Affidavit (Doc. 155). Plaintiff did not oppose Defendants' Motion for Leave to File Original Affidavit. Accordingly, Defendants' Motion for Leave to File Original Affidavit is granted.

## I. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party

on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## II. Facts

As a preliminary matter, the court notes that plaintiff's response brief fails to adequately respond to, much less controvert, defendants' statement of uncontroverted facts. Plaintiff simply and summarily denies defendants' statement of facts without citing to any evidentiary support, and then proceeds to state his own facts. Local Rule 56.1 requires that "[e]ach fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's fact that

is disputed." D. Kan. R. 56.1(b)(1). Plaintiff complied with none of these requirements. However, the court will deem defendants' facts controverted to the extent that plaintiff's own facts fairly meet the substance of defendants' statement of facts and are supported by competent evidence.

 The court addresses one more preliminary matter. Plaintiff's response brief attaches as evidentiary support an affidavit of plaintiff which was executed on April 8, 2002. In that affidavit, plaintiff attempts to controvert facts he repeatedly admitted in his deposition. Specifically, plaintiff now states that he was mistaken in his answers regarding eight questions. For example, if plaintiff said "yes," "correct," or "right" in his deposition, he now contends what he really meant was "no," "incorrect," or "wrong" respectively. Plaintiff claims that he was mistaken in his answers during his deposition due to his blood sugar level fluctuating.

 In determining whether to consider plaintiff's affidavit, the court notes that contradictions found in a witness's testimony are not, in themselves, sufficient to preclude such testimony. *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 973 (10th Cir.2001). Indeed, "in determining whether a material issue of fact exists, an affidavit may not be disregarded [merely] because it conflicts with the affiant's prior sworn statements." *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986). However, in assessing a conflict under these circumstances, "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Id.* Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was

based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Id.*

The court concludes that plaintiff's affidavit should be disregarded in determining summary judgment. Plaintiff's deposition was taken in three sessions on April 26, October 31, and November 5, 2001. Plaintiff testified under oath and in the presence of both of his attorneys. Plaintiff testified that he was on medication at that time but that he would be able to testify fully and accurately. Plaintiff was instructed and agreed to ask for a break in the deposition at any time he felt he needed one. In fact, plaintiff exercised his right to ask for breaks. On December 18, 2001, plaintiff submitted two pages of requested changes to his deposition testimony, none of which included the changes he now asserts in his affidavit. The court notes that plaintiff clearly had access to the relevant information at the time he was deposed. Moreover, the court finds no confusion in plaintiff's earlier deposition testimony which the affidavit attempts to explain. To the contrary, plaintiff's deposition testimony was unequivocal. In these circumstances, the court determines that the conflict between plaintiff's deposition testimony and his affidavit raises only a sham issue. The court disregards those portions of plaintiff's affidavit that attempt to contradict his deposition testimony.

Finally, the court notes that it construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Federal Rule of Civil Procedure 56. The court will discuss the relevant facts at issue as those facts relate to each claim plaintiff has asserted.

## III. Discussion

On February 20, 2001, this court issued an Order dismissing several of plaintiff's claims. In that order, the court also specifically identified plaintiff's remaining claims against the moving defendants [1] as follows: 42 § 1981 claim for hostile work environment against Tele–Communications, Inc., TCI of Overland Park, Inc., and TCI Communications, Inc. (Counts I and IX); § 1981 claim for retaliation against Tele–Communications, Inc. (Counts II and III); false representation claim against Tele–Communications, Inc., TCI of Overland Park, Inc., and TCI Communications, Inc. (Count IV); 42 § 1985(3) claim against McHenry and Ramos (Count V); outrage claim against Tele–Communications, Inc., McHenry and Ramos (Count V); and a § 1981 claim against Bell, Gentry and Wood (Count VII).[2]

### A. 42 U.S.C. § 1981 Claims

Plaintiff, an African–American male, began working for Telecable of Overland Park, Inc., which is now TCI of Overland Park, Inc., in February 1989. In September 1996, plaintiff sustained a work-related injury to his back, and plaintiff also was suffering from carpal tunnel syndrome. At that time, plaintiff worked in the warehouse. Plaintiff testified in his deposition that, due to his injury and the work restrictions placed on him by his doctors, the job duties he could perform in the warehouse became severely limited.

In November 1996, TCI transferred defendant Brian McHenry, a fellow co-worker of plaintiff's, to the warehouse so plaintiff could train him. Plaintiff contends that defendant McHenry immediately be-

---

**1.** All defendants except Brian McHenry moved to dismiss plaintiff's claims.

**2.** For purposes of this opinion, "TCI defendants" will refer to Tele–Communications, Inc., TCI of Overland Park, Inc., and TCI Communications, Inc. collectively.

gan calling plaintiff racially disparaging names. That same month, plaintiff claims that he raised an issue to management regarding racial remarks and racial discrimination in the distribution of overtime. Defendants contend that plaintiff did not allege any of the remarks were made by defendant McHenry. Defendants further contend that management investigated and appropriately addressed the issues plaintiff raised.

On January 28, 1997, defendant Brian McHenry purchased a handgun from defendant Dimitri Ramos, a supervisor. Defendant McHenry testified that he was an avid gun collector. Defendant McHenry paid defendant Ramos the money and retrieved the handgun from Ramos's car in the parking lot of TCI of Overland Park, Inc. Defendant McHenry further testified that, because it was dark and cold outside, he returned to the warehouse to look at the gun and check its condition. Plaintiff alleges that, in the warehouse, defendant McHenry pointed the gun at plaintiff's head in a threatening manner and threatened plaintiff with the gun. Defendant McHenry testified that, in the warehouse, he pulled the gun out of its metal case and pulled back the slide on the gun to make sure the chamber was empty. When he did this, McHenry testified, a bullet fell out and landed on the floor. Defendant McHenry testified that the gun was never fired and that he never threatened to pull the trigger on the gun, never threatened to kill plaintiff, never placed the gun at plaintiff's head, and never used racial epithets towards plaintiff. Moreover, defendant McHenry testified that he never told defendants Ramos, Bell, Gentry, or Wood that he was going to bring the gun into the warehouse because, defendant McHenry asserts, he decided at the last minute to bring the gun inside. Once management learned that defendant McHenry brought a gun into the warehouse, defendant McHenry was suspended and ultimately fired for bringing the gun into the warehouse.

Beginning May 14, 1997, plaintiff was absent from work due to his injuries. On May 21, 1997, plaintiff was given the option of taking paid extended sick leave or leave under the Family Medical Leave Act (FMLA). Plaintiff chose to take extended sick leave. When plaintiff used up his paid sick leave, he was notified by certified mail that further leave would be designated as FMLA beginning July 17, 1997. On September 4, 1997, plaintiff began receiving temporary total disability payments under workers compensation. On September 6, 1997, plaintiff was notified that his FMLA leave would expire on October 9, 1997, and that he should return to work on that date. Plaintiff did not, however, return to work or otherwise respond to the notice. Plaintiff's employment was terminated on October 13, 1997.

## 1. Statute of Limitations

■ Defendants contend that plaintiff's claims under 42 U.S.C. § 1981 are limited to conduct that occurred within the statute of limitations period. In this case, the two-year statute of limitation set forth in Kan. Stat. Ann. § 60-513(a)(4) applies to plaintiff's § 1981 claims. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (the forum state's statute of limitations for personal injury actions provides appropriate limitations period for claims under § 1981); *Tilmon v. Dillard's Dep't Stores*, 58 F.Supp.2d 1276, 1281 (D.Kan.1999) (holding that the two-year statute of limitations set forth in Kan. Stat. Ann. § 60-513(a) applies to claims brought under § 1981). Plaintiff filed this lawsuit on January 21, 1999. Thus, any claims based on conduct or events that occurred prior to January 21, 1997, are time-barred.

Plaintiff claims that he was discriminated against on the basis of his race because he was not given more overtime or permitted to change his work schedule "[d]uring the entire year of 1996." (Pretrial Order, Plaintiff's Factual Contentions, at 5). Also, plaintiff claims that on January 16, 1997, he was refused wrist supports by medical doctors and was required to take a drug test based on his race. (*Id.* at 19). The court finds that these claims are barred by the applicable statute of limitations. Defendants therefore are entitled to summary judgment on plaintiff's claims of discrimination regarding overtime, scheduling, wrist braces, and drug testing.

## 2. Gun Incident

■ In Count I, plaintiff asserts that Tele–Communications, Inc. discriminated against him on the basis of his race by allowing a racially hostile work environment. Similarly, Count IX alleges a claim for hostile work environment against the TCI defendants. Plaintiff asserts both counts pursuant to 42 U.S.C. § 1981. Plaintiff also alleges in Count V a claim of conspiracy in violation of 42 U.S.C. § 1985(3).

Defendants contend that plaintiff's hostile work environment claims involving the gun incident with defendant McHenry fail as a matter of law. Defendants argue that, to survive summary judgment, plaintiff must show that defendants failed to take prompt remedial action. Defendants point to the fact that, immediately after the gun incident, they suspended defendant McHenry and, following an investigation, ultimately terminated defendant McHenry's employment effective February 3, 1997. Plaintiff asserts that the gun incident was merely a culmination of the racially hostile environment of which defendants were aware because, plaintiff contends, he had reported defendant McHenry's prior racial slurs to management.

To the extent plaintiff relies on incidents of an alleged hostile environment that occurred prior to January 21, 1997, the court finds that such claims are barred by the statute of limitations. Defendants admit in the Pretrial Order that plaintiff raised an issue to management regarding racial remarks, although defendants contend that plaintiff failed to allege any of the remarks were made by defendant McHenry. In any event, the record reflects that plaintiff raised concerns in November 1996. Thus, plaintiff had two years from the time the alleged incidents occurred to file this lawsuit. Because plaintiff failed to timely do so, any claims based on pre-January 21, 1997, incidents are barred.

■ With respect to the gun incident itself, which occurred within the applicable time period, the court must determine whether defendants may be held liable. To survive summary judgment on this claim, the record must support an inference of a racially hostile work environment *and* a basis for employer liability. *Bolden v. PRC, Inc.,* 43 F.3d 545, 550 (10th Cir. 1994). Pertinent to the instant case, one way in which an employer may be held liable for hostile work environment based on a supervisor's or co-worker's racial harassment is where the employer knew, or should have known, about the violation *and* failed to respond in a reasonable manner. *Wright–Simmons v. City of Okla. City,* 155 F.3d 1264, 1269 (10th Cir.1998). Thus, a plaintiff must establish that his employer "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Adler,* 144 F.3d at 673. A plaintiff may demonstrate actual employer knowledge if the plaintiff has reported harassment to management-level employees. *Id.*

While the court has found that claims based on any alleged incidents occurring prior to January 21, 1997, are time-barred, the court may consider such incidents as evidence of defendants' knowledge at the time the gun incident occurred. Thus, if plaintiff previously complained to management and management failed to respond in an appropriate manner, defendants may be liable for McHenry's alleged conduct during the gun incident.

The problem, however, is that the record is incomplete regarding the issue of whether defendants adequately responded to plaintiff's prior complaint. There is no dispute that plaintiff complained in November 1996. However, defendants claim in the Pretrial Order that the allegations were "investigated and appropriately addressed." (Pretrial Order, Defendants' Factual Contentions, at 6). On the other hand, plaintiff asserts that management "did nothing" in response to his complaints. (Pretrial Order, Plaintiff's Factual Contentions, at 4). Neither party, however, presents evidence supporting its respective position. The court, therefore, finds a genuine issue of material fact regarding whether defendants adequately responded to plaintiff's complaints of a hostile work environment prior to the gun incident.

■ However, even if the court determined that defendants failed to respond appropriately to any alleged prior racial harassment, summary judgment on this § 1981 claim is still appropriate. The court points out that § 1981 was enacted to prevent discrimination against an individual on the basis of his or her race or ethnic background. *Saint Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Accordingly, a plaintiff claiming discrimination under § 1981 must make a showing of racial animus. *Patrick v. Miller*, 953 F.2d 1240, 1250 (10th Cir.1992). Plaintiff in this case has failed to produce evidence that defendant McHenry was motivated by racial animus at the time the gun incident occurred.

In response to defendants' statement of facts regarding the gun incident, plaintiff states that his allegations "are nowhere contravened by the affidavits of defendants and, therefore, plaintiff is entitled to rest on those allegations and is entitled to avoid any claim of summary judgment with respect to liability of any of those defendants." (Plaintiff's Response to Defendants' Motion for Summary Judgment, ¶ XIX, at 10). The court disagrees. Defendants present evidence, in the form of a sworn affidavit of defendant McHenry, that the gun incident did not occur in the manner plaintiff has alleged. Defendant McHenry testified that he never fired the gun, never threatened to pull the trigger, never threatened to kill plaintiff, never placed the gun at plaintiff's head, and most significantly, never used racial epithets towards plaintiff either before or during the gun incident. Because defendants have presented competent evidence, plaintiff may not rest upon the mere allegations of his pleadings. Fed.R.Civ.P. 56(e). Rather, to withstand summary judgment, plaintiff must present evidence establishing a genuine issue of fact that discriminatory animus was at least in part a motivating factor.

Plaintiff fails to point the court to any evidence in the record showing that the gun incident was racially motivated. In his affidavit, plaintiff refers to "McHenry's assaulting me with the gun." (Plaintiff Affidavit, at 6). Plaintiff attached to his affidavit a copy of a police report, which he filed with the Overland Park Police Department. In that report, plaintiff recounts his version of what occurred, stating that defendant McHenry came inside

the warehouse, twirled and waved the gun, and then put the gun to plaintiff's face. Plaintiff further stated in the police report that defendant McHenry took the clip out and a bullet came flying out of the gun. According to plaintiff, defendant McHenry said laughing and cursing, "I could have shot you." Nowhere in the police report does plaintiff state that defendant McHenry used racial slurs or evidenced any other racial animus during the gun incident. Furthermore, except for plaintiff's allegations, there is no evidence in the record that defendant McHenry previously exhibited racial animus toward plaintiff such that the court could infer racial discrimination on the day the gun incident took place. While the court later will determine whether defendant McHenry's conduct was outrageous, the court finds there is no evidence in the record that plaintiff was discriminated against on the basis of his race. Accordingly, plaintiff's § 1981 claim on this issue fails.

Furthermore, because the court has found no evidence of racial animus with respect to the gun incident, plaintiff's claim of conspiracy pursuant to § 1985(3) fails. Plaintiff alleges that defendant Ramos's sale of the handgun to defendant McHenry, and defendant McHenry's subsequent use of the handgun toward plaintiff, constituted a conspiracy in violation of § 1985(3).

■■■ To survive summary judgment on a § 1985(3) conspiracy claim, plaintiff must present competent evidence of some racial or other class-based invidious discriminatory animus behind the actions of defendants. *Brown v. Reardon,* 770 F.2d 896, 905–06 (10th Cir.1985) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790,

29 L.Ed.2d 338 (1971)). In this case, there exists no evidence in the record that the gun incident, or the prior sale of the gun to defendant McHenry, was racially motivated. Thus, plaintiff's conspiracy claim under § 1985(3) is dismissed.[3]

■■■ Finally, plaintiff claims that defendants failed to take appropriate action against defendant McHenry for "racial discrimination directed against Plaintiff by McHenry on account of Plaintiff's race." (Pretrial Order, Plaintiff's Theories of Recovery, at 9). The court already has found that any claims based on pre-January 21, 1997, incidents are time-barred. Thus, the only remaining potential claim regarding this issue is whether defendants took appropriate action in response to the gun incident. The court has determined that plaintiff failed to show the gun incident was racially motivated. However, even if the gun incident were racially motivated, the court finds that defendants' response was appropriate for purposes of § 1981.

■■■ To measure whether an employer's response to racial harassment is adequate, the Tenth Circuit looks to whether response was "'reasonably calculated to end the harassment.'" *Adler,* 144 F.3d at 675 (citing *Ellison v. Brady,* 924 F.2d 872, 882 (9th Cir.1991)). In making this determination, the court may consider the timeliness of the plaintiff's complaint, whether the response was unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment. *Id.* at 676. In the case at hand, defendants suspended defendant McHenry the day after the gun incident took place. Defendants investigated the matter and, on February 3, 1997, less than

---

**3.** As previously discussed, defendant McHenry did not join the remaining defendants' summary judgment motion. However, since the court has found no evidence of racial motivation behind the gun incident or the sale

of the gun, plaintiff cannot maintain a claim against defendant McHenry that he conspired with defendant Ramos to deprive plaintiff of his constitutional rights.

one week after the incident, defendants terminated defendant McHenry's employment for bringing a gun into the workplace. Defendants also issued a Corrective Discipline Memorandum to defendant Ramos on January 30, 1997. The court concludes that defendants' response to the gun incident was both timely and reasonable. Count I, which asserts a hostile work environment claim based on defendants' alleged failure to take appropriate corrective action, is therefore dismissed in its entirety. Moreover, according to the Pretrial Order, plaintiff's allegations in Count I and Count IX are somewhat duplicative. Thus, to the extent that plaintiff's allegations in Count IX are the same as in Count I, those claims are dismissed.

### 3. Plaintiff's Termination

 In Counts III and IX, plaintiff alleges that he was terminated from his employment in violation of § 1981. Defendants argue that plaintiff's claims for discriminatory or retaliatory discharge are barred by this court's previous finding that defendants terminated plaintiff for a legitimate, nondiscriminatory reason. The court first notes that, to the extent plaintiff attempts to plead a cause of action pursuant to § 1981 in Count III, that claim fails as a matter of law. In the Pretrial Order, plaintiff asserts in Count III that he was not accommodated in his employment after his on-the-job injury and that he later was terminated from his employment.[4] (Pretrial Order, Count III, at 12). Nowhere in

Count III does plaintiff assert that defendants' actions were taken on account of plaintiff's race, which is required to assert a claim under § 1981. Accordingly, the court dismisses Count III. *Olguin v. Lucero*, 87 F.3d 401, 405 (10th Cir.1996) (affirming dismissal of § 1981 claim where there was no allegation of racial or ethnic discrimination).

 In its February 20, 2001 order, this court considered whether defendants terminated plaintiff's employment in retaliation for plaintiff exercising his rights under the Kansas Workers Compensation Act. The court analyzed plaintiff's claim under the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Accordingly, the court set forth that, once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to rebut the presumption by offering a legitimate, non-retaliatory motive for the discharge. If rebutted, the presumption drops out of the case, and the plaintiff must carry the full burden of persuasion of proving by a preponderance of the evidence, which is clear and convincing in nature, that the defendant acted with discriminatory or retaliatory intent.

In its order, the court set forth the elements required for plaintiff to establish a prima facie case.[5] The court noted a lack of evidence suggesting that defendants were motivated by a retaliatory in-

---

4. In its previous ruling, the court dismissed plaintiff's claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12001, *et seq.*

5. To establish a prima facie case of retaliatory discharge under Kansas law, a plaintiff must produce evidence demonstrating: (1) that the plaintiff filed a claim for workers compensation benefits or sustained an injury for which he might assert a future claim for such bene-

fits; (2) that the employer had knowledge of the plaintiff's compensation claim or the fact that the plaintiff had sustained a work-related injury for which he might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury and the termination. *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1298 (10th Cir.1998).

tent but, in any event, assumed that plaintiff had established a prima facie case. The court went on to find that defendants had proffered a legitimate, nondiscriminatory reason for terminating plaintiff's employment.[6] Without any evidence that the defendants acted with discriminatory or retaliatory intent, the court found that plaintiff's claim failed as a matter of law.

 Plaintiff now asserts that he was discharged on the basis of his race and that his discharge was retaliatory. Under either claim, the court applies the *McDonnell Douglas* burden shifting test. To establish a claim of retaliation under § 1981, plaintiff must show that (1) he engaged in protected opposition to discrimination; (2) he was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000). To establish a claim of discrimination, plaintiff must show that (1) he is a member of a protected class; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir.2001).

The court finds that plaintiff has failed to establish a prima facie case of discriminatory or retaliatory discharge. There simply exists no evidence in the record that the defendants were motivated by a discriminatory or retaliatory intent in terminating plaintiff's employment. Moreover, even if plaintiff had established a prima facie case, the court concludes that plaintiff's claims fail.

The court already determined that defendants proffered a legitimate, nondiscriminatory reason for discharging plaintiff. Plaintiff, however, argues that the court in its previous order made no determination regarding whether plaintiff's discharge was for a nondiscriminatory or nonretaliatory reason and that the court decided only that defendants did not violate the Kansas Workers Compensation Act by discharging plaintiff for his failure to report to work. The court disagrees with plaintiff's interpretation of its order.

While the court did not consider defendants' proffered reason for termination in the context of plaintiff's § 1981 claims, the analysis is the same: Plaintiff first must establish a prima facie case, be it for retaliation under workers compensation or racially motivated discrimination and retaliation. Next, defendants must articulate a nondiscriminatory reason. Even if plaintiff could establish a prima facie case of discrimination or retaliation, the court is faced with the issue of whether defendants have proffered a legitimate, nondiscriminatory reason for plaintiff's discharge. In

---

**6.** The circumstances of plaintiff's termination are as follows. In January 1997, plaintiff filed a claim under the Kansas Workers Compensation Act for his September 1996 work injury and for his carpal tunnel syndrome. Beginning on May 14, 1997, plaintiff was absent from work due to his injuries. On May 21, 1997, plaintiff was given the option of taking paid extended sick leave or leave under the Family Medical Leave Act (FMLA). Plaintiff chose to take extended sick leave. When plaintiff used up his paid sick leave, he was notified by certified mail that further leave would be designated as FMLA begin-

ning July 17, 1997. On September 4, 1997, plaintiff began receiving temporary total disability payments under workers compensation. On September 6, 1997, plaintiff was notified that his FMLA leave would expire on October 9, 1997, and that he should return to work on that date. Plaintiff did not, however, return to work or otherwise respond to the notice. Plaintiff's employment was terminated on October 13, 1997. Defendants proffered that plaintiff was discharged because he did not show up for work or otherwise respond to the October 1997 notice.

its previous order, the court decided that defendants set forth a nondiscriminatory reason. Accordingly, the law of the case doctrine precludes reconsideration of that issue in the context of plaintiff's § 1981 claims.[7] *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) ("[T]he [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

At this stage, to survive summary judgment, plaintiff must provide evidence that the reason offered by defendants was merely a pretext for discrimination. In this case, plaintiff has failed to produce any evidence, and the court found nothing in the record, suggesting that defendants' proffered reason is unworthy of belief. As such, defendants are entitled to summary judgment on plaintiff's wrongful discharge claims.

### 4. Plaintiff's Transfer

In Count II, plaintiff claims that he was transferred to the CLI position in retaliation for complaining about defendant McHenry's alleged racial hostility towards plaintiff. Beginning January 31, 1997, plaintiff was transferred from his warehouse position to a position as a CLI driver. Plaintiff received the same pay and benefits in his position as CLI driver as he had received in his previous position. Plaintiff claims that the transfer to CLI driver was retaliatory because, he asserts, the TCI defendants knew that the CLI position required plaintiff to perform work

more damaging to plaintiff's wrists and back than the warehouse position.

As previously set forth, to establish a prima facie case of retaliation, plaintiff must show that (1) he engaged in protected opposition to discrimination; (2) he was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Kendrick*, 220 F.3d at 1234. In this case, there is no factual dispute that plaintiff complained to management about the gun incident and that several days later plaintiff was transferred to the CLI position. Thus, the court finds that the proximity in time supports an inference of a causal connection between the protected activity and the position transfer.

 However, the court concludes that the position transfer does not constitute adverse employment action. Plaintiff states in his affidavit, "I knew when I was transferred to the position of CLI driver that I was in store for problems because I knew that the activity of the CLI driver would require me to use my arms, wrists, hands and back far more that I was required to do while working in the warehouse checking decoder boxes." (Plaintiff Affidavit, at 5). Yet there is no evidence in the record that the transfer to CLI driver did in fact require plaintiff to use his arms, wrists, hands and back more, nor is there evidence that the alleged extra use of his arms, wrists, hands and back constituted more than a mere inconvenience. Accordingly, because plaintiff's salary and benefits remained the same, and because plain-

---

**7.** Plaintiff argues that his retaliation claim under the Kansas Workers Compensation Act should be reinstated. The court notes that plaintiff has improperly raised this issue. For the court to reconsider it prior ruling, plaintiff must bring either a motion to alter or amend the judgment under Rule 59(e) (if filed within ten days of the entry of judgment) or a motion seeking relief from the judgment under Rule 60(b) (if filed more than ten days after the entry of judgment). *United States v. Emmons*, 107 F.3d 762, 764 (10th Cir.1997). Plaintiff filed no motion requesting that the court reconsider it ruling. The court therefore declines to address the merits of plaintiff's argument.

tiff has failed to establish that the transfer constituted more than a mere inconvenience or an alteration of his job responsibilities, the court holds that the position transfer did not constitute an adverse employment action. *Accord Flores v. City and County of Denver*, 30 Fed.Appx. 816, 818 (10th Cir.2002) (finding no adverse employment action where plaintiff failed to show position transfer amounted to a significant change in plaintiff's employment status).

■ Even assuming plaintiff could establish a prima facie case of retaliation, plaintiff's claim fails. Defendants assert that plaintiff was transferred to the CLI driver position to accommodate plaintiff's medical restrictions and his schedule request. In November 1996, plaintiff had complained that his job in the warehouse required him to do tasks that went beyond his medical restrictions. Then, in October and November 1996, plaintiff had requested to change his hours so that he could work from 8:00 a.m. to 5:00 p.m. Plaintiff disputes, but provides no evidentiary support, that the position transfer better accommodated his work restrictions. However, there is no dispute that the position transfer allowed plaintiff to work his requested work schedule. Thus, the court finds that defendants have articulated at least one, if not two, legitimate, nondiscriminatory reasons for plaintiff's transfer to the CLI driver position. And because plaintiff has failed to provide evidence that defendants' proffered reasons are pretextual, plaintiff's claim of retaliation cannot survive summary judgment. Accordingly, Count II is dismissed in its entirety.

### 5. Remaining § 1981 Allegations

Plaintiff's remaining allegations in Count IX appear to be as follows: that after January 30, 1997, he was not authorized to purchase safety boots nor furnished safety equipment which defendants regularly furnished other employees; that he was required to participate in activity which aggravated his carpal tunnel syndrome; that defendants failed to offer plaintiff other employment when he was placed on light duty when others equally or less qualified, who were white, were placed in light duty positions; and that defendants failed to accommodate him when others, who were white, were accommodated.

### a. Disparate Treatment

The court is unclear whether plaintiff is now attempting to assert a claim for disparate treatment. The language of the Pretrial Order suggests that plaintiff is claiming that he was treated differently than other white employees. However, defendants object to the Pretrial Order to the extent that plaintiff attempts to assert anything other than a racially hostile work environment claim because, defendants argue, any such claims already were dismissed by the court or were not previously pled.

Upon review of plaintiff's First Amended Complaint, the court finds that the only reference in Count IX to the treatment of plaintiff compared to other employees regards whether plaintiff was furnished safety equipment. Thus, plaintiff's attempt at this juncture to assert additional disparate treatment claims not previously set forth in plaintiff's First Amended Complaint fails. *Richardson v. Great Plains Mfg., Inc.*, No. 93–1028–PFK, 1994 WL 324553, at *6 (D.Kan. June 30, 1994).

■ Even if the court allowed plaintiff to assert these newly pled disparate treatment claims, the claims would in any event fail. To establish a prima facie case of disparate treatment, plaintiff must show (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that similarly

situated non-minority employees were treated differently. *Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir.1998). Specifically, to survive summary judgment, plaintiff must come forward with evidence that similarly situated employees outside plaintiff's protected class were treated differently. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1406 (10th Cir.1997) (affirming summary judgment in favor of defendant where plaintiff failed to present evidence that he was treated differently than similarly situated non-minority employees). In this case, plaintiff has failed to identify a single similarly situated non-minority employee who was treated more favorably than plaintiff. Having failed to produce any such evidence at the summary judgment stage, those claims must fail.

■■■ The same holds true for plaintiff's claim that he was not furnished safety equipment which was regularly furnished to other employees. Plaintiff has failed to identify any similarly situated non-minority employees who were furnished safety equipment. In fact, plaintiff alleges that defendants furnished safety equipment "for use of other employees." (Pretrial Order, at 18). Thus, plaintiff has failed to plead that those "other employees" were similarly situated non-minorities. Accordingly, to the extent plaintiff has asserted claims for disparate treatment, those claims are dismissed.

**b. Hostile Work Environment**

■■■ The court turns to the remaining allegations in Count IX in the context of plaintiff's hostile work environment claim. The court already determined that plaintiff could not show the gun incident was racially motivated and that, as a result, plaintiff could not assert a claim for hostile work environment based on that incident. However, in addition to showing racial animus,

a plaintiff also must establish that "the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment" in order to survive summary judgment. *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir.1994) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Thus, to bring an actionable claim for hostile work environment, a plaintiff must show he was subjected to a "steady barrage of opprobrious racial comments;" a few isolated incidents of racial enmity or sporadic racial slurs is insufficient. *Id.*

Upon review of the record, the court concludes that there is no evidence suggesting that the incidents about which plaintiff complains were racially motivated. Moreover, the court finds as a matter of law that those incidents were neither severe nor pervasive enough to constitute a hostile work environment. Accordingly, Count IX is dismissed in its entirety.

**c. Defendants Bell, Gentry, and Wood**

In Count VII, plaintiff alleges that defendants Bell, Gentry, and Wood "had control over the terms and conditions of Plaintiff's employment by TCI and agreed among themselves to treat Plaintiff or permit Plaintiff's mistreatment by McHenry and by management, generally, in deprivation of his rights on account of his race in violation of 42 U.S.C. § 1981." (Pretrial Order, at 15). In its previous order, the court dismissed plaintiff's § 1985(3) conspiracy claim against these defendants.

At this juncture, the court has found no violation of plaintiff's rights under § 1981. Plaintiff has put forth no evidence that these defendants, or for that matter any defendant, deprived plaintiff of his § 1981 rights. Defendants are entitled to summary judgment on Count VII.

## B. False Representation Claim

■ Plaintiff has asserted a claim in Count IV against the TCI defendants for false representation. Plaintiff's false representation claim stems from a previous lawsuit plaintiff filed. In 1997, plaintiff filed suit against Tele–Communications, Inc. in the Circuit Court of Jackson County, Missouri, alleging discrimination and harassment on account of his race. Tele–Communications, Inc. removed the suit to the United States District Court for the Western District of Missouri.

In March 1998, Tele–Communications, Inc. filed a motion to dismiss or, in the alternative, for summary judgment in the case before the Western District of Missouri. In that motion, which was supported by affidavits, Tele–Communications, Inc. argued that plaintiff was not employed by Tele–Communications, Inc., but rather by TCI of Overland Park, Inc. Plaintiff did not respond, and the district court issued a show cause order directing plaintiff to respond. Plaintiff did not timely respond to the show cause order. As a result, the district court dismissed plaintiff's case without prejudice on September 8, 1998. The United States Court of Appeals for the Eighth Circuit affirmed the district court's dismissal.

■ Plaintiff alleges in Count IV that defendants led plaintiff to believe that he was employed by Tele–Communications, Inc. and then took an allegedly inconsistent position in the Western District of Missouri case. To establish a claim for fraud under Kansas law, plaintiff must show an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, where plaintiff justifiably relies on the statement and acts to his injury and damage. *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545, 551–52 (1980).

■ The court finds that plaintiff's claim for fraud fails as a matter of law. Foremost, the representations defendants set forth in their pleadings and affidavits were not fraudulent. "To be actionable, a false representation must be one of fact as distinguished from an expression of opinion, which ordinarily is not presumed to deceive or mislead, or to influence the judgment of the hearer, and on which he has no right to rely, since he is assumed to be equally able to form his own opinion." *Fisher v. Mr. Harold's Hair Lab, Inc.,* 215 Kan. 515, 523, 527 P.2d 1026, 1033 (1974).

In this case, defendants merely were challenging their legal status as plaintiff's employer. The Tenth Circuit has set forth an eleven-part test to determine employment status, explicitly stating that courts must look to the totality of circumstances surrounding the working relationship between the parties and that no single factor is determinative. *Lambertsen v. Utah Dep't of Corr.,* 79 F.3d 1024, 1028 (10th Cir.1996). Here, plaintiff has presented evidence that Tele–Communications, Inc. and TCI Communications, Inc. employed plaintiff. Specifically, plaintiff has presented evidence that his previous payroll stubs, which came from Tele–Communications, Inc.'s principal place of business (Colorado), indicated either Tele–Communications, Inc. or TCI Communications, Inc. as plaintiff's employer. Plaintiff also has shown that his medical insurance forms, disability insurance forms, and retirement benefits forms refer to Tele–Communications, Inc. or TCI Communications, Inc. as plaintiff's employer. On the other hand, defendants have put forth evidence that they had a good faith basis for disputing plaintiff's status as an employee of Tele–Communications, Inc. For instance, defendants have presented evidence that Tele–Communications, Inc. does not conduct day-to-day management,

nor is involved in the conduct of the day-to-day labor and employment relation matters of TCI of Overland Park, Inc., and that Tele–Communications, Inc. maintains its own separate books, corporate records, and in every other way observes the formalities of a corporation independent from TCI of Overland Park, Inc. Moreover, defendants direct the court to an employee handbook plaintiff received as an employee, which states that any references to Tele–Communications, Inc. in marketing materials, employee benefits programs, training materials, operating manuals, or as the issuer on payroll checks, do not mean that Tele–Communications, Inc. is the employer.

In these circumstances, plaintiff's employment status is not a "fact" that can be true or untrue for purposes of plaintiff's fraud claim. Rather, it is a complicated analysis to be resolved by courts and juries as a mixed question of law and fact. *Bank IV Salina, N.A. v. Aetna Cas. & Sur. Co.*, 810 F.Supp. 1196, 1207–09 (D.Kan.1992) (holding that defendant's attorneys' representation that plaintiff's claim had no merit was not a statement of fact that could have induced plaintiff to settle his claims but was instead a statement of opinion and argument).

Even if the court concluded that defendants' representations to the Western District of Missouri District Court about plaintiff's employment status could, as a matter of law, be considered fraudulent, the court holds that plaintiff's fraud claim still fails. Plaintiff cannot establish that he justifiably relied on defendants' representations or that any such reliance caused plaintiff's alleged damages.

The ultimate dismissal of plaintiff's case in the Western District of Missouri was the result of plaintiff's (or plaintiff's attorney's) inaction. Tele–Communications, Inc. had filed a motion, arguing that plaintiff had sued the wrong entity because TCI of Overland Park, Inc. was actually plaintiff's employer. Plaintiff had the opportunity to seek out the identity of his employer and more importantly, to present argument that Tele–Communications, Inc. was in fact his employer. Yet, plaintiff did not attempt to discover or name his employer. Most significantly, plaintiff failed to respond to Tele–Communications, Inc.'s motion to dismiss, which directly put at issue plaintiff's employment status, and plaintiff ultimately failed to respond to the court's show cause order. Thus, it was plaintiff's failure to comply with the court's show cause order, and not Tele–Communications, Inc.'s representation that it was not plaintiff's employer, which proximately caused the case in the Western District of Missouri to be dismissed. Accordingly, the TCI defendants are entitled to summary judgment on plaintiff's claim for fraudulent misrepresentation. Count IV is hereby dismissed.

## C. Outrage Claim

Plaintiff asserts a claim of outrage against defendants Tele-communications, Inc., Ramos, and McHenry. The tort of outrage, also called intentional infliction of emotional distress, "is not a favored cause of action under Kansas law." *Gillum v. Fed. Home Loan Bank of Topeka*, 970 F.Supp. 843, 854 (D.Kan.1997). To survive summary judgment on a claim for the tort of outrage, plaintiff must demonstrate that the conduct of the defendants was intentional or in reckless disregard of the plaintiff; that the conduct was extreme and outrageous; that there was a causal connection between the defendants' conduct and the plaintiff's mental distress; and that the plaintiff's mental distress was extreme and severe. *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 257, 978 P.2d 922, 930 (1999).

A claim of outrage also has two threshold requirements: "(1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff was of such extreme degree the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it." *Id.* In other words, "liability may be found only in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

Before addressing plaintiff's outrage claim, the court again notes that defendant McHenry is the only defendant who did *not* submit a motion for summary judgment to the court in this case. Therefore, the court's decisions regarding plaintiff's outrage claim as to defendant Ramos and Tele–Communications, Inc. are not applicable to defendant McHenry.

### 1. Defendant Ramos

To survive summary judgment, plaintiff must first establish conduct by the defendant that is intentional or in reckless disregard of the plaintiff. In this case, plaintiff has not alleged that defendant Ramos was directly involved in the incident that occurred in the warehouse. Rather, plaintiff alleges, and defendants do not dispute, that defendant Ramos sold the gun to defendant McHenry prior to the incident. Therefore, in order for the court to find defendant Ramos's conduct to be intentional or reckless, plaintiff must show that defendant Ramos either intentionally facilitated the incident that occurred in the warehouse or that he was aware of, but failed to prevent, defendant McHenry's plan to bring the gun into the warehouse

and threaten plaintiff. Evidence that defendant Ramos merely sold defendant McHenry the gun without knowledge of defendant McHenry's intentions is insufficient evidence of intentional or reckless conduct.

Plaintiff has not explicitly alleged that defendant Ramos intentionally facilitated the incident that occurred in the warehouse, was aware of defendant McHenry's intention to bring the gun into the warehouse, or was aware of defendant McHenry's intention to threaten plaintiff with it. On the other hand, defendant McHenry has stated in his affidavit that he never told defendant Ramos or anyone at TCI that he was going to bring the gun inside the warehouse or expose plaintiff to the gun because, McHenry testified, he decided at the last minute to bring the gun inside.

Because defendant Ramos has properly supported his summary judgment motion with respect to the first element of plaintiff's outrage claim, the burden shifts to plaintiff, who "may not rest on the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. In the case at hand, plaintiff has failed to "set forth specific facts" in his response showing that defendant Ramos intentionally facilitated or had prior knowledge of the incident that occurred in the warehouse. *Id.* Further, "[t]he mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the non-movant presents facts such that a reasonable jury could find in favor of the non-movant." *Simms v. Oklahoma,* 165 F.3d 1321, 1326 (10th Cir.1999). The court concludes that a reasonable jury could not find that defendant Ramos's conduct was

intentional or in reckless disregard of the plaintiff. Consequently, there is no genuine issue of material fact as to the first element of plaintiff's claim of outrage against defendant Ramos.

Plaintiff also fails to prove a genuine issue of material fact regarding the second element. As previously discussed, the court concludes that a reasonable jury could not find that defendant Ramos's conduct was intentional or reckless with respect to defendant McHenry's alleged assault on plaintiff. However, even if defendant Ramos had been aware that defendant McHenry planned to bring the gun into the warehouse to threaten plaintiff, mere knowledge of that plan, without direct involvement or action, does not rise to the level of extreme and outrageous conduct towards plaintiff. The few cases in which Kansas courts have permitted outrage claims to survive summary judgment involved "repeated physical threats and racially or sexually abusive language," rather than, as in the instant case, alleged awareness of a possible future threat. *Gillum*, 970 F.Supp. at 854. Therefore, defendant Ramos has sufficiently shown that there exists no genuine issue of material fact as to the second element.

In addition, plaintiff fails to make the requisite showing regarding the third element, which is the presence of a causal connection between the defendant's conduct and the plaintiff's mental distress. Plaintiff asserts that, because defendant Ramos sold defendant McHenry a loaded gun, a causal connection exists between the sale and plaintiff's alleged exposure to the gun. However, the court finds that the sale of the gun was independent from the subsequent incident that occurred in the warehouse. In other words, the sale of the gun was not the direct cause of the incident that occurred in the warehouse. In addition, plaintiff has failed to offer any evidence that anyone other than defendant McHenry knew about defendant McHenry's intent to bring the gun inside. The court can find no causal connection between defendant Ramos's sale of the gun and the gun incident itself since defendant Ramos did not even know that defendant McHenry would bring the gun inside the warehouse. Therefore, there is no genuine issue of material fact as to this element.

The fourth required element is proof that the plaintiff's mental distress following the incident was extreme and severe. Plaintiff contends that he suffered such extreme and severe mental distress that he has endured "numerous physical and psychological complaints" since the incident. Because defendants have not offered the court any evidence challenging plaintiff's claim of emotional distress, plaintiff may rest on his pleadings regarding this issue.[8]

In addition to being extreme and severe, the mental distress suffered by plaintiff also must be "reasonable and justified under the circumstances, and there can be no liability where the plaintiff has appeared to suffer exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor had knowledge." *Roberts v. Saylor*, 230 Kan. 289, 294, 637 P.2d 1175, 1180 (1981). Plaintiff has not indicated that he is particularly susceptible to any specific distress or that defendants were

---

8. However, the court is unconvinced that plaintiff's emotional distress is extreme enough to satisfy this element as a matter of law. Plaintiff has not given the court any proof of extreme mental distress in the form of a psychologist's or medical doctor's testimony, much less specifically alleged mental distress such as loss of sleep, anxiety, depression, etc.

aware of any susceptibility. Therefore, even if plaintiff could produce evidence of extreme mental distress, such evidence must point to mental distress which is reasonable and justifiable.

In summary, plaintiff failed to prove a genuine issue of material fact as to the elements required for an outrage claim against defendant Ramos. Therefore, the court grants defendant Ramos summary judgment on plaintiff's outrage claim.

### D. Tele–Communications, Inc.

■ Plaintiff alleges that Tele–Communications, Inc. was his employer at the time of the incident that occurred in the warehouse.[9] Kansas federal courts applying Kansas law have held that "an employer is not liable for the intentional torts of an employee unless they are committed while the employee is acting within the scope of his employment or in furtherance of his employer's business, and not with a purpose personal to the employee." *Farris v. Bd. of County Comm'rs*, 924 F.Supp. 1041, 1050 (1996) (citing *Williams v. Cmty. Drive–In Theater, Inc.*, 214 Kan. 359, 366, 520 P.2d 1296, 1301 (1974)). Defendant McHenry's purchase of the gun on the premises of TCI of Overland Park, Inc. was not within the scope of his employment. Tele–Communications, Inc. is not in the business of buying or selling guns. Defendant McHenry testified that he collects guns as a hobby and purchased the gun for personal pursuits only, a fact that plaintiff has not disputed. This fact, coupled with the undisputed evidence that Tele–Communications, Inc. did not know of defendant McHenry's intent to bring the gun into the warehouse, leads the court to conclude that Tele–Communications, Inc. cannot be held liable for the intentional

conduct of defendant McHenry. Plaintiff's outrage claim against Tele–Communications, Inc. fails as a matter of law.

**IT IS THEREFORE ORDERED** that defendants' Motion for Leave to File Original Affidavit (Doc. 155) is granted. Further, defendants Tele–Communications, Inc., TCI Communications, Inc., TCI of Overland Park, Inc., Dimitri Ramos, Jim Bell, and Clyde Gentry's Motion for Summary Judgment (Doc. 153) is granted. Counts I, II, III, IV, V, VII, IX are hereby dismissed, as those counts assert claims against these moving defendants. The only remaining claim in this case is a claim in Count V for outrage against defendant McHenry.

---

**9.** Exactly by whom plaintiff was employed is in dispute. Without deciding that issue, the court will analyze plaintiff's outrage claim in the manner in which he as asserted the claim—as against Tele–Communications, Inc.